## SIMMONS v BECKER, Admr.

Ohio Appeals, 2nd Dist, Montgomery Co.

No. 1572. Decided Dec. 30, 1939.

I. L. Holderman, Dayton, for defendant-appellant.

Holland & Holland, Dayton, for plaintiff-appellee.

## OPINION

By GEIGER, J.

In the court below the plaintiff filed a petition to which motions were addressed and sustained and subsequently filed an amended petition, in which it is recited that the plaintiff is the son of Walter R. Simmons and the defendant Sylvia E. Simmons is the widow òf Walter R. Simmons and the stepmother of the plaintiff; that Ann B. Simmons, mother of the plaintiff and former wife of Walter R. Simmons died on the 18th day of May, 1931, seized of four parcels of real estate; that at the time of his mother's death, plaintiff was 18 years of age; that his mother died intestate and that his father, Walter R. Simmons, was appointed her administrator; that he and his father lived in the home place after the death of his mother; that the plaintiff performed household duties and depended entirely upon his father, Walter R. Simmons, now deceased, for advice and protection; that the final account in the estate of Ann B. Simmons was filed on the 6th day of August, 1935, and certificates of transfer of the four parcels of real estate were filed on the 6th of August, 1935.

Plaintiff says that on the 6th day of August, 1935, Walter R. Simmons, now deceased, his father, procured and induced plaintiff to execute a deed to the said Walter R. Simmons for all the real estate inherited by plaintiff from his mother; that said deed was executed while he was living with his father and there was no consideration therefor; that plaintiff relied upon the representation of his father that it was for the best interest of the plaintiff and that said Walter R. Simmons, the father would take care of the plaintiff; that plaintiff did not seek advice but relied wholly upon his father.

It is stated that in October, 1935, the defendant, Sylvia E. Simmons, was married to the plaintiff's father, who died on the 15th of November, 1936; that the defendant, Sylvia E. Simmons now claims as an heir of Walter R. Simmons, her deceased husband, the undivided half of the premises described. Plaintiff prays that the deed executed by him to his father be ordered cancelled or that Becker, as administrator of the estate of Walter R. Simmons, and the defendant, Sylvia E. Simmons, be ordered to convey to the plaintiff the pemises and that they be enjoined from disposing of the same, and that a constructive trust in said premises be ordered in favor of the plaintiff.

Motions were filed to this amended petition and were overruled.

To this petition, Becker, administrator, files a general denial. Sylvia E. Simmons files an answer admitting a number of the allegations of the petition but denying all others and especially denying that there was no consideration for the deed from Walter K. Simmons to Walter R. Simmons, and specifically denying that the plaintiff relied upon the representation of his father and denies that Walter K. Simmons did not seek advice from others before making the deed.

She alleges that the plaintiff, Walter K. Simmons, at the time he executed the deed to Walter R. Simmons on August 6, 1935, was 23 years of age and represented by attorneys and acted on his

own initiative and not under the influence of his father.

To the answer of Sylvia E. Simmons, a reply is filed by Walter K. Simmons denying all allegations not contained in his amended petition. ·

On February 6, 1939, the cause came on for hearing upon the pleadings and the court found for the plaintiff, Walter K. Simmons, and against the defendant, George Becker, administrator, and Sylvia E. Simmons, widow of Walter R. Simmons. The court found that the deed executed by the plaintiff on August 6, 1935, to plaintiff's father should be cancelled; that a constructive trust was created in favor of the in favor of the plaintiff at the date of the execution of the deed; that the defendants, Sylvia E. Simmons, widow, and George Becker, administrator, not being purchasers for value, had no claim or interest in th premises; that the title should be restored to the plaintiff, Walter K. Simmons.

A motion for new trial was made and overruled and the final order was made on March 7, 1939, to the effect that the deed be cancelled and that a constructive trust was created in favor of the plaintiff; that the defendants have no claim or interest in the premises; that the plaintiff is the owner in fee simple and entitled to the immediate possession. It was adjudged that the decree of the court have the force and effect of cancelling, setting aside and annulling said deed and the clerk is directed to have the decree recorded.

The defendant, Sylvia E. Simmons, gave notice of appeal on questions of law and fact and the case was lodged in this court.

The docket and journal entries disclose that on October 20, 1938, the matter came on to be heard upon the motion of Sylvia E. Simmons for a separate finding of facts and conclusions of law in the decision of the court, "and the court finding said motion well taken sustains the same."

We will make a brief analysis of the findings of fact. The court, in a number of instances, has made strong statements, which if supported by the evidence, would justify the order made, but which, if not justified by the evidence, would indicate that the court's finding of law was not properly supported by the facts. In this analysis of the finding, we will indicate by emphasis the finding of facts upon which we have some doubt as to sufficiency of supporting evidence.

The court makes a preliminary statement as to finding of facts, which recite the circumstances leading up to the deed made by the son to the father and with special reference to the settling of the mother's estate, and finds in part:

"and while the father was still acting in his capacity as administrator of the estate of Anna B. Simmons, this father **advised and induced** the plaintiff herein, his son, Walter K. Simmons, to convey to him, the father, the legal title to the premises which are described in the amended petition."

"and the father **further represented** that the conveying of the premises from the son to him, the father, would not be for the purpose of actually giving to the father all the interest in the premises, **but was a mere temporary transfer.**"

"The son when he reached the age of maturity continued to live and dwelled alone with his father in this home; he was **not emancipated** but was **dominated** in his every wish by the father, **whose suggestions and opinions were followed unhesitatingly,** and with great confidence and respect for the father; **that undue influence was exercised by the father, in inducing** the plaintiff, his child to convey the child's entire inheritance to this father; that the child having great love, faith and confidence in his father and belief in the representation of the father and acting upon that representation **that such a conveyance would only be temporary,** did thereupon make the conveyance and did not receive any consideration therefore."

"The court finds that no where is there any evidence of an intention on the part of the plaintiff to make a gift to his father."

"The court finds tha+ no evidence was adduced to the effect that this plaintiff was represented by counsel or had any legal advice whatsoever before this conveyance to his father. To the contrary, the court finds that the plaintiff's advice received was from the father."

The court finds that the defendant, Sylvia E. Simmons, is the surviving spouse of Walter R. Simmons, deceased, and is now claiming her rights as widow as follows:

"Years allowance _____$1250.00
Exemption _____ 1200.00
and one-half of the real estate described in the plaintiff's amended petition."

The facts in this case must arouse sympathy. The plaintiff when 18 years of age suffered the loss of his own mother from whom he inherited the property, subject to the dower rights of his father. When he was 23 years of age and still living with his father, he, on the 6th of August, 1935, made a deed to his father, then unmarried. On the 1st of October, 1935, the father married the defendant, Sylvia E. Simmons, and on the 15th day of November, 1936, died intestate leaving Sylvia, his surviving spouse, who now claims an interest as such in the property that came to her deceased husband from his son, who had inherited it from his own mother. In the meantime the son was married. The claim of the plaintiff's stepmother, as a widow of his father, to a large portion of the property which the plaintiff inherited from his own mother and deeded to his own father, does not present any stronger appeal to our sense of fairness than it did to that of the court below. However, we can not let our sympathy influence our judgment.

## THE EVIDENCE

There are a number of witnesses in this matter, much of whose testimony is of little or no consequence in throwing light upon the controversy.

One Edgar G. Denlinger, who was the attorney for the estate of Anna Simmons, was a witness introduced by the plaintiff, and he testified, in substance, that he had a conversation with Kenneth, the son, no one being present, some time before the deed was executed. Kenneth came to his office and stated he would like him to prepare a deed for all the property in his mother's estate to his father. The attorey states he questioned him as to whether he understood what he was doing, that he would be conveying all his ownership to his father and he replied that he understood that was what the father wanted and they agreed for the son to have it done and the attorney should prepare the deed, "and that at a later date his father would fix it all right with him." He did not state the purpose, only that his father would fix it all right with him. At the time he made the deed, he knew what his rights were in the property and what he was doing and that he was conveying all his title to the property. An additional reason for making the deed was that it would simplify the description of the real estate. On being questioned, "did he use the word temporary arrangement?" the attorney stated, "Can't remember he used those words. The understanding was it was only temporary, in effect in a short time the father would fix it with him as to the division of the property." The attorney testifies that Kenneth did not consult with him in regard to his rights. The rights of the two, father and son, had been agreed on the day the son was there and he instructed the attorney to draw up the deed. The attorney explained to both father and son what the rights of each were. The son was entitled to the full title of the real estate of his mother subject to his father's dower interest. The attorney being asked whether at the time he instructed him to make the deed, the son knew what

his rights were in the property, the attorney replied, "I think he did, he was with us at the time, whether he knew what he was doing, and explained that he was conveying all his title in that property to his father." The attorney had advised Kenneth that his father had a dower interest in the property and that he, Kenneth, conveyed his interest in the property. The whole thing was explained to these two men, father and son, several times. They had consulted with him several times before the administration begun and delayed the beginning of the administration for the reason that Kenneth was under age. They waited until he became of age before they started.

A Mr. Lint testified that at a conversation at which both Kenneth and his father were present, the father said that Kenneth was going to sign it over to him and Mr. Lint looked at Kenneth and said, is that the way you want it, and he said, that was the way Dad wanted me to do it. On being asked whether Kenneth ever came to him for advice, he replied, no, not exactly, he always had that much confidence in his father. The father and son never had any serious trouble. They had their ups and downs. The father would advise the son what to do.

Testimony is also introduced to the effect that after the death of Anna Simmons, one of the houses on the property belonging to her was occupied by the father and son, who continued to live there alone until the father was married and afterwards the son continued to live with the father and his new wife until the son himself was married and left the premises. The testimony also shows that the father exercised jurisdiction over all the property and collected the rent and that one house brought in a rental of about $1000, which would belong to the father and son as their respective interests in the real estate appeared. There is testimony, somewhat confusing, as to the value of the estate at the time the deed was made. At the time of the appraisement, the real estate was returned at a valuation of $6600.00. There

was some confusion as to what portion of the house was located on each of two lots, the ownership of which rested in the husband and wife, but not in like amounts.

The two accounts indicate that the balance of the first and second account amounting to a total of $734.00, due the administrator, was waived by the administrator. That, of course, would have constituted a claim against the decedent's estate for which the administrator was entitled to reimbursement as well as for his proper fees. On the day of the filing of the final account, an application was made in the Probate Court for the transfer of the real estate in which it was stated that Walter K. Simmons, the son, inherited all subject to the dower of the widower; that Walter R. Simmons, the husband, had a vested dower interest in all of the real estate.

The most that may be said in support of the claim of the plaintiff is that his mother died when he was 18 years of age; that he lived with his father doing household work and working also at a factory until he was 23 years of age, at which time he made the deed. The evidence is sufficient to support the view that the father and son had an understanding as to what the son would do towards conveying the property to the father and that the final administration of the mother's estate was purposely delayed until the son became of age; that the son had full advice from Mr. Denlinger, the attorney for his mother's estate, as to what were the respective interests of himself and his father in his mother's property and what would be the effect of the deed, and stated, in reference to the deed, that that was what his father wanted and that there was an understanding that it was only temporary and that in a short time his father would fix it with him as to the division of the property. It also appears that the father had a just claim against the mother's estate, which he did not assert.

Are these sufficient facts to support the allegations of the petition and the

judgment of the court now under review?

## THE LAW.

**Berkmeyer v Kellerman, 32 Oh St 239,** is an interesting case. It is there held that:

"1. It is the peculiar province of equity to take cognizance of transactions growing out of relations of trust, and to prevent those holding such positions from using them and their influence for their own aggrandizement."

"3. One standing in the relation of a parent and guardian—in fact, of a minor, having the custody and control of such minor and of his property during such minority, is bound to the most scrupulous good faith in the management of the estate, * * *"

"4. Where a party occupying such a relation claims any benefit or advantage from a settlement with his ward, on his coming of age, of his trust transactions, the burden of proof is on him to show that he has made full disclosures; that he has exercised no undue influence; and that such settlement is fair and equitable."

This is a very interesting case and related to an action brought by one, formerly a minor and ward, to set aside a deed by which he conveyed certain real estate in Cincinnati, the deed being executed in 1859. The case is so complete and quotes so many authorities sustaining the syllabus that we could not do it justice by quotations from it, but commend it for careful consideration.

**Sheffer v Sheffer, 16 Oh Ap 305,** holds in effect, that where evidential facts lead to the conclusion that a deed given by an adopted son to his foster mother the day after he became of age, was executed without knowledge of his rights and because of unquestioning confidence in his foster mother, a case is presented which requires a court of equity to set the deed aside for undue influence and fraud on the part of the foster mother, who remained silent as to the son's rights, but was active in securing the execution of the deed. The court, through Houck, J., states:

"A court of equity must and does guard with extreme jealousy such transactions between parties standing in the relationship that appears in this case. It is the duty of chancellors to protect the weak as against the strong, and to see that equity and justice are done all parties when not only legal but equitable rights are to be determined."

This case is also worthy of close attention.

Taylor v Taylor, 8 Howard's Reports (U.S.) 183, discusses at length the principles upon which courts of equity interfere to protect persons from undue and improper influences. The court, through Daniel, J., examines and discusses at length many cases by both English and American text writers. On page 199 et seq., it is stated, in substance, that the rules of law controlling the contract of parties who do not stand in equality but who deal at disadvantage on one side, whether applicable to the relation of parent and child or other fiduciary relations have been laid down in courts of England and our own country. The Court then quotes from Justice Story on Equity Jurisprudence, Vol. 1, §307, where Justive Story states, in substance, that in this class of cases there is often found some intermixture of deceit, imposition, overreaching, or other positive fraud, "but the principle on which courts of equity act in regard thereto stands independent of any such ingredients, upon a motive of public policy; and it is designed in some degree as a protection to the parties against the effects of overweening confidence and self-delusion and the infirmities of hasty and precipitate judgment. These courts will therefore often interfere in such cases, where, but for such peculiar relations, they would wholly abstain from granting relief, or grant it in a

very modified and abstemious manner."

The court further holds:

· "If confidence is reposed, it must be faithfully acted upon, and preserved from any intermixture of imposition. If influence is acquired, it must be kept free from the taint of selfish interests, and cunning and overreaching bargains. If the means of personal control are given, they must be always restrained to purposes of good faith and personal good." * * *

This case being so well worthy of reading in full, we refrain from further consideration.

Housewright v Steinke, 326 Illinois 308, holds:

"1. While undue influence which will avoid a deed must go to the extent of depriving the grantor of his free agency and a conveyance voluntarily made will not beset aside, yet where the parties stand in a confidential relation courts will presume a transaction of which the dominant party obtained the benefit was fraudulent, regardless of the existence of actual fraud, undue influence or coercion; and such party has the burden of proving the transaction was just and fair, especially where the rights of a minor are involved."

"2. Where a deed is procured without consideration by a parent from a child for the property of the child, the burden is upon the parent to show that the transaction was fair and was entered into by the child fully understanding its rights and fully comprehending the transaction and that the transaction was for the benefit of the child."

Giers v Hudson, 102 ·Arkansas, 232, holds that where a daughter, though of age, remains under her father's roof, any contract, conveyance or business transaction between them will be closely scrutinized by the courts, and a conveyance from a daughter to her father will not be permitted to stand unless the transaction was characterized by the utmost fairness and good faith on the father's part.

Shackleford v Shackleford, 11 A. L. R., 730 holds:

"1. A parent who takes a deed from his child soon after it reaches majority and while it is living under his roof has the burden of clearing the transaction of every suspicion, and establishing its fairness and good faith."

This case is followed by more than fifteen pages of annotations supporting the principle.

Counsel for appellee calls our attention to the case of Finney v Morehouse, 27 Oh Ap 499, where it is held:

"3. 'Undue influence' which will invalidate a deed, must be such as to control mental operations of a grantor, overcome his power of resistance, and oblige him to adopt the will of another, thus producing disposition of property which he would not have made freely."

This case did not involve a deed from a child to a parent.

Willis v Baker, 75 Oh St 291, holds that in an action by a wife to have declared null and void a conveyance of her lands on the ground that she was induced to make it by undue influence and it appears that it was duly executed, the burden is upon the plaintiff to establish one of the grounds of undue influence by clear and convincing proof and mere preponderance of the evidence is not sufficient.

This case does not involve the deed of a child to a parent but of a wife to a husband.

McAdams v McAdams, 80 Oh St 232, holds that when it appears that the deed is in apparent accord with previous declarations of the grantor as to his intention and that the grantor had ample opportunity to read the deed, the presumption of undue advantage by reason of confidential relations is rebutted and the burden rests upon the

grantor to show by clear and convincing proof that the deed is fraudulent.

This involved a deed made by a father to his son, who was an attorney and who it was claimed left out some of the conditions that the grantor intended to be incorporated in the deed. The court speaking through Davis, J., remarks on page 243:

"The presumption which arises from the existence of relations of trust and confidence having been rebutted, fraud may not be presumed. It must be established by clear and convincing evidence before the instrument will be reformed on that ground."

Our understanding of this principle is that where the presumption which arises from the relation of trust and confidence has been rebutted, that then fraud will not be presumed but must be established by clear and convincing evidence. In other words, that so long as the question of the validity of the deed rests upon the fiduciary relations the burden is upon the one to whom such deed is made to show that the transaction was free from fraud by reason of such fiduciary relations. Having done this, it is then a burden upon the grantor seeking to set aside the deed to show by clear and convincing evidence that there was fraud. The case at bar falls within the first proposition and under the decisions, it appears that the burden is upon the grantee to show that there was no undue influence where a deed is made from a child to a parent under the circumstances of this case. We feel that taking into consideration all the evidence that has been offered, that the administrator of the grantee, or the widow have not produced sufficient evidence to overcome the presumption of undue influence which arises out of the relation of son and father as detailed by the evidence in this case.

Judgment affirmed. Cause remanded.

HORNBECK, PJ. & BARNES, J., concur.