## WASMUTH v PRUGH, et

Ohio Appeals, 2nd Dist, Montgomery Co.

No. 1602. Decided Jan. 24, 1940.

Floyd Koogler, Dayton, for plaintiff-appellee.

Thomas, Hyers, Leyland & Stewart, by P. Eugene Smith, Dayton, for defendants-appellants.

## OPINION

**By GEIGER, J.**

This case is before this court on appeal on questions of law and fact from the final order of the Court of Common Pleas.

The issues made are disclosed by the pleadings in the court below. The plaintiff, Elizabeth Anna Wasmuth, in her amended petition alleges, as a first cause of action, that she is the widow of Joseph Wasmuth, who died May 15, 1935; that the defendant William Mathias Schmitt is her son and that other defendants, of whom there are quite a number, are the children of her deceased husband, Joseph Wasmuth; that the respective husbands and wives of said children are parties defendant and that Ambrose Lawrence Wasmuth is the executor of the estate of Joseph Wasmuth and plaintiff's advisor; that on the 22nd of August, 1936, she was seized in fee simple of an undivided one-half interest in certain real estate and at the same time had a life estate subject to divestment upon re-marriage in the remaining one-half; that on the day last 'mentioned, the defendant, Ambrose Lawrence Wasmuth, procured and induced plaintiff to execute a quit claim deed to the defendant children of her deceased husband and to William Mathias Schmitt, her own child by a former marriage, reserving to herself a life estate, by fraudulently representing to her that it was necessary that she sign said deed to avoid trouble and in order that she might be permitted to continue to occupy the dwell-

ing house located thereon. Plaintiff being a person with but a meager education and unable to read and comprehend the meaning of the contents of the deed, and relying on said fraudulent representation of the defendant, Ambrose Lawrence Wasmuth, did execute said deed believing it to be a paper which would avoid trouble and would enable her to continue to occupy the dwelling.

At a later date, she was granted leave to amend the first cause of action by adding thereto "said deed was signed in the presence of but one witness who subscribed his name thereto".

For a second cause of action, she alleges that the consideration named was "love and affection and other valuable consideration", whereas there was no consideration either good or valuable.

For a third cause of action, she alleges the deed was never delivered to any of the defendants but was by the scrivener, without her knowledge and consent, recorded and then returned to the plaintiff in whose possession it has remained. Plaintiff prays that the deed may be declared null and void and ordered cancelled and for other relief.

To this petition a demurrer was filed and overruled. An answer was filed by the defendants, who were the children of her deceased husband and her stepchildren. They make certain admissions of matters set up in the petition, including her seizure of the property as alleged, and the making of the deed and her reservation of the unrestricted right to live in and occupy the premises during her life.

The defendants deny that any person represented to the plaintiff that it was necessary that she sign the deed to avoid trouble; deny the fraudulent representation; deny her lack of knowledge as to the contents of the deed and deny that it was executed without consideration and deny that it was not delivered or that it was recorded without her knowledge. They further aver that if the court finds that said deed was executed without consideration, that the same was a' gift and so intended by the plaintiff. They deny all other allegations not specifically admitted.

An answer is filed by George William Wasmuth, a non-competent, by his trustee denying all allegations.

The plaintiff replies and denies that in said quit claim deed, as a part of the consideration, plaintiff reserved to herself the unrestricted right to live in and occupy the property; denies that the deed was a gift or was so intended and denies that there was ever a delivery.

On July 20, 1939, the court found that there was no consideration for the deed; that the actions of the defendants, in obtaining from plaintiff the deed, amounted to constructive fraud; and that the deed should be set aside.

Motions for new trial and for judgment non obstante veredicto were filed and on September 15, 1939, the court made the final order overruling said motions and ordered that the deed be set aside, vacated and declared to be of no force or effect to affect the title of said premises or to convey the same to the defendants.

On the same day, notice of appeal was filed by the defendants, through their attorney, from the judgment rendered on September 15, 1939, said appeal being on questions of law and fact.

We examine briefly the reasoning of the court below upon which he based his conclusion that there was no consideration for the property. The court comments upon the fact that the quit claim deed was to her six step-children and her own son, they being the same persons to whom the deceased husband had willed the remainder of the property, after the termination of the life estate. The consideration expressed was for love and affection and for other valuable consideration. The grantor reserved to herself the right to occupy and use all of the real estate during her natural life, the estate conveyed being the remainder after the death of the grantor. The court points out that the consideration named was love and affection and other valuable consideration and finds that none of the step-

**58**

children, save one, were on good terms with the plaintiff herein. One of the grantees, Ambrose Lawrence Wasmuth, a stepson, and William Mathias Schmitt, the son of the plaintiff, were on good terms with the plaintiff. The court states that the evidence negatives love and affection and does not disclose any other consideration, unless in the reservation clause, and the court comments upon the claim of counsel for defendants that the reservation clause gives to the plaintiff an absolute life estate in the property which can not be divested by her remarriage. The will of her deceased husband provided that she should have a life estate subject to divestment upon her remarriage. The court points out that she could not convey more than she had received from her husband and therefore, she could not reserve a life estate in the undivided half that came from her husband, free from the provision of the husband's will that it would terminate upon her remarriage. The court holds that to have released the contingency upon which the life estate was based would have required a grant from those legatees or owners of the remainder. Counsel for the defendants seek to avoid this conclusion by claiming that if the stepsons accepted the deed on the condition that the widow had a life estate in all of the real estate, that they would be estopped if they attempted to assert title to that portion which came to their stepmother from their own father in the event of the stepmother's remarriage. The court, therefore, concludes that there was no consideration for the deed and that the conveyance must fail.

We have read with care the bill of exceptions, which embodies the testimony of the widow and of Ambrose Lawrence Wasmuth, the stepson friendly to the widow, and of Frank List, Jr., who acted as attorney in the settlement of the estate of the plaintiff's deceased husband.

The testimony of the widow amply sustains the allegation of her petition that she was "a person with but a meager education and unable to read and comprehend the meaning of the contents of the deed". In the main, her answers to interrogatories pertinent to the issues were to the effect that she "did not know" or that she "did not remember". Her son, Ambrose, likewise showed a considerable lack of intelligence. However, we may extract from their evidence the following facts. The widow was confused and irked by the proceedings necessary to settle her husband's estates and wished to avoid a repetition in the settlement of her own estate and received the advice that if she made a quit claim deed, her own estate would be exempted from administration, and to secure this the quit claim deed was made. Her stepsons and her own son were inserted in the deed as grantees because her husband had made them all beneficiaries under his will after the termination of her life estate or her remarriage. She seemed to have been impressed with the idea that inasmuch as her husband recognized her own son, who was her husband's stepson, as a beneficiary under his will, that it was an obligation upon her part to recognize six of her stepsons as the grantees of her deed, not seeming to realize that by so doing she conferred upon her stepchildren six times as much as her husband had conferred upon her child.

The testimony does not show any "love and affection" between the plaintiff and five of her stepchildren, there being a friendly relation between one, Ambrose, and between her and her own child. While Ambrose was not particularly intelligent and probably had no ulterior purpose in influencing his stepmother to make the quit claim deed, yet there runs through the testimony the fact that Ambrose did have an influence upon the action of his stepmother in making the deed. Mrs. Wasmuth constantly reiterated in her testimony that her stepson did not influence her in making the deed, but it appears that he was her close attendant and advisor, not only in the settlement of her husband's estate but in the making of the quit claim deed. She

stated that she followed his suggestion because she did not understand the matters that were then being settled; that Ambrose had handled her business since the death of her husband, both in the settlement of her husband's estate and in all matters up to the time of her testimony. She stated in answer to the question as to what instructions she had given to Mr. List, the attorney, regarding the making of the deed or its final disposition, "I didn't tell him nothing". She did not know what had been done with the deed after its execution and that her stepson Bruce, as she called Ambrose, did not tell her anything. She displayed great ignorance as to what a deed really was, simply knew that the paper she signed was a deed.

Her rather foggy intellect displays a tragedy in a minor key. She knew nothing of business and little of the transactions in which she was engaged. Ambrose, the stepson, testified that when his stepmother informed him that a suit would be brought to set aside the deed on the ground of fraud that he felt very badly about it;

"I had tried to do right by all of them and the best I knowed how to do, with all of them. As List had told me how to do that to protect every one of them. I thought I had done the best thing I knowed how. I felt very badly hurt about it."

Upon being further inquired as to what he had done to protect all of them, he stated:

"Well, I figured so she would have a home as long as she lived, you see, and also it could go to the rest of the children after she died, and it would be equally divided amongst all of them."

We was afraid what would happen to the property if it remained in her name. He stated that the fellow she was going to marry never had anything and did not know the value of a dollar and would squander the property. The prospective husband was not in evidence at the time the deed was made but has appeared since the death of her husband as a boarder and apparently as a lover.

In explanation of his action in reference to the execution of the deed Ambrose stated that he thought "it was the right thing to do and there wouldn't be no fighting or anything done. They all had their name on that deed and were all sharing alike and there wouldn't be anything else to it. She had the property as long as she lived there, and that the deed was carrying out the intention of his father's will." In answer to the question how long he had advised his stepmother in her business affairs he stated that he would not say exactly advised her, but everything she had asked me "I have always given her to the best of my knowledge. I have always advised her on everything she asked me." Anything she would ask him to the best of his knowledge he would answer her; that his stepmother had depended upon him since the death of her husband to look after her affairs. He stated that at the time she signed the deed it was all prepared for her to sign: that he himself just glanced over it but did not read it; that he did not know whether the plaintiff read it or not. He stated that on the day of the signing of the deed, his stepmother gave the attorney $50.00 for services rendered to him as executor of his father's estate. He states that under the deed she was supposed to have the property as long as she lived. On being asked what he had meant by the protection that was to be given to all by the signing of the deed, he stated: "I didn't want no arguments about it or anything at all in this deed. I thought it would be the greatest way out, after her death they would all get an equal share, see," and that he told this to his stepmother. "She wanted not to go through the probate court and all that stuff and wanted to know would there be any way of going around this, without going through that court way." He did not suggest the quit claim deed, but the attorney did. All the names included as grantees were taken from

the father's will. He never told any of the other parties to the deed about what had taken place at the signing of the deed. He seems to have been the only person who knew the contents of the deed.

It appears from the testimony of the attorney that the half interest which she inherited under the will of her husband was appraised at $1800.00; that the court allowed $1000.00 as her year's allowance; that her interest in her husband's estate had she not taken under the will, and considering the debts she had paid, would have amounted to $1900.00, slightly more than the appraised value of the real estate. The attorney, on cross-examination, stated that it was his opinion that she had more than enough against the estate to permit her to take the real estate at its appraised value, which would have given her the entire property free and clear of all claims.

Under these conditions which need not be further elaborated, we will briefly examine the law as it may be pertinent to the facts.

**13 O. Jur., Page 360, §46, et seq.,** states the fundamental principles in reference to the consideration for a deed and §58 et seq., discusses the necessity for delivery. 8 R. C. L., Page 961, et seq., is a further elaboration of the rules relating to consideration and delivery. We do not feel that it would be of advantage to do more than point out where the law may be found.

In the recent case of Simmons v Becker, pending in this Court in this county and decided Dec. 30, 1939, **(30 Abs 622)** we had occasion to examine the law in reference to deeds that were made under the influence of one occupying a fiduciary relation to the grantor. That case related to a deed made by a son to a father, but we do not detect any essential difference where the deed is made by a mother to the sons, where the mother, due to her ignorance, is the weaker of the parties to the transaction.

In that case we cited and commented upon **Berkmeyer v Kellerman, 32 Oh St 239,** where it is held:

"1. It is the peculiar province of equity to take cognizance of transactions growing out of relations of trust, and to prevent those holding such positions from using them and their influence for their own aggrandizement."

We further cited **Sheffer v Sheffer, 16 Oh Ap 305** and Taylor v Taylor, 8 Howard's Reports (U.S.) 183, in which latter case the principles upon which courts of equity interfere to protect persons from undue and improper influences are examined at large. The court quotes from Story on Equity Jurisprudence, Vol. 1, §307, to the effect:

"But the principle on which courts of equity act in regard thereto stands independent of any such ingredients, upon a motive of public policy; and it is designed in some degree as a protection to the parties against the effects of overweening confidence and self-delusion and the infirmities of hasty and precipitate judgment.

If confidence is reposed, it must be faithfully acted upon, and preserved from any intermixture of imposition. If influence is acquired, it must be kept free from the taint of selfish interests, and cunning and overreaching bargains. If the means of personal control are given, they must be always restrained to purposes of good faith and personal good * * *".

In Housewright v Steinke, 326 Illinois 308, it is held, in substance, that where parties stand in a confidential relation courts will presume a transaction of which the dominant party obtained the benefit was fraudulent, regardless of the existence of actual fraud, undue influence or coercion; and such party has the burden of proving the transaction was just and fair, especially where the rights of a minor are involved.

See also Shackleford v Shackleford, 11 A. L. R. 730 and the numerous annotations thereunder. **Willis v Baker, 75 Oh St 291.**

In **McAdams v McAdams, 80 Oh St 232,** Davis, J. on **Page 243** states:

"The presumption which arises from the existence of relations of trust and confidence having been rebutted, fraud may not be presumed. It must be established by clear and convincing evidence before the instrument will be reformed on that ground."

This principle is to the effect that so long as the question of the validity of the deed rests upon fiduciary relations, the burden is upon the one to whom such deed is made to show that the transaction is free from fraud. Having done this, it is then a burden upon the grantor seeking to set aside the deed to show by clear and convincing evidence that there was fraud.

One can not read the record in this case without being convinced that the whole transaction arose out of a desire of ignorant people, unadvised, to deed property for a purpose, which, while possibly commendatory, worked to the detriment of an ignorant grantor, dominated by the will of one occupying a fiduciary capacity, who, while he may have been honest, yet was not advising the grantor in her own interest but in the interest of a group of stepchildren, himself and the brothers of the advisor, who were ultimately to reap the benefit. We believe that under the principles governing such cases, the deed should be set aside.

We do not deem it profitable to discuss the question of consideration further than we have already done.

There was a further allegation that at the time the deed was executed there was only one witness in the room and that therefore the deed was not properly executed. This is denied by the attorney and we have no reason to doubt his word upon the matter.

Question is also raised as to the delivery of the deed. We think that the principles enunciated in **Vol. 13 O. Jur., Page 872, §§58 et seq.** are sufficient to support the delivery in this case. The deed was left with the attorney and we may presume that it was so done for the purpose of constructive delivery and recording.

After the deed was made and delivered, the widow rested in fancied security until she sought an old age pension, which was refused on the ground that she had transferred her property. She then consulted an attorney and the action was brought. We believe that plaintiff has sustained her position and the judgment of the court below will be affirmed.

HORNBECK, PJ. & BARNES, J., concur.

## APPLICATION FOR REHEARING

No. 1602. Decided Feb. 7, 1940.

BY THE COURT:

This matter is presented to us on an application for rehearing. We have reread our original opinion in this matter and have again considered the citations of authorities there made, together with our analysis of the evidence. Counsel has pointed out certain comments of the Court, which are picked out from a long opinion, and upon which basis it is claimed that the Court erred in the application of the law to its finding of facts.

We are unable to detect any error in the matter and do not believe that anything could be gained by a rehearing, as all the matters were originally presented by counsel and carefully considered.

Application for rehearing denied.

HORNBECK, PJ., GEIGER & BARNES, JJ., concur.