RAYMOND ET AL. *v.* HEARON ET AL.

(Decided March 26, 1928.)

*Messrs. Powell & Smiley* and *Messrs. Albert D. & Robert S. Alcorn, Messrs. Barker, Davison & Shattuck,* and *Messrs Dolle, O'Donnell & Cash,* for plaintiffs in error.

*Mr. Edward H. Brink* and *Mr. W. F. Fox,* for defendants in error.

HAMILTON, P. J. The action below was to contest the validity of the last will and testament of Laura Crosby, which had been admitted to probate in the probate court of Hamilton county on the 22d day of January, 1926. The trial resulted in a verdict finding that the paper writing was not the last will and testament of Laura Crosby, and judgment was entered on the verdict. From that judgment, error is prosecuted to this court, in which the contestees, Belle McLaughlin Hearon, and Elizabeth Emma McLaughlin, seek a reversal, specifying many grounds of error, which they claim require a reversal.

The will is attacked on the grounds of mental incapacity and undue influence.

It is apparent from the record that the case was strongly contested. Ten witnesses were called and examined by the contestants, and 15 witnesses were called and examined by the contestees, resulting in a record of over 500 pages of evidence.

We are asked to reverse the case on the weight of the evidence. This required a full consideration of the evidence contained in the record. A discussion of all the evidence and its probative value is not possible within the limits of a reasonable opinion. We will, therefore, only undertake to state some of the salient points.

It appears that Laura Crosby was a widow who died childless, leaving an estate of approximately $38,000. The contestant was her niece, a daughter of Mrs. Crosby's brother, who resides in South Carolina. This niece was not remembered in the will.

It appears that Mrs. Crosby made her first will in 1917. This will was executed in the office of Richard Powell, where she was taken by George Koehler, Sr., who was a client of Mr. Powell's, and who was then, and had been for some time, transacting business for Mrs. Crosby. That will was not produced, and is not in evidence, and there is nothing to show what the provisions of that will were.

In 1919, Mrs. Crosby executed a second will. This will was executed at her home near Park avenue and McMillan street, Walnut Hills, and was drawn by Mr. Powell at his office prior to its execution at her home. Mr. Koehler who was made one of the contestees in the case, called with his son at the office of Mr. Powell and took him in an automobile to the

home where the will was executed in the presence of Mr. Koehler.

In the meantime, Mr. Koehler had continued to act as business agent for Mrs. Crosby, and, together with his wife, had looked after many of the personal wants of Mrs. Crosby.

In this 1919 will the contestant was not remembered. One-third of the estate was left to another blood niece, who was a sister of the contestant; one-third to a niece of Mrs. Crosby's husband, who resided in Boston; and the remaining one-third to Mr. Koehler, less two small contingent legacies, one of $1,000, and two of $500 each.

A third will was executed in 1922, and was written and witnessed by Mr. Powell, who had drawn and witnessed the former wills.

In the meantime, Mr. Koehler had continued to look after the business interests of Mrs. Crosby, and had bought and sold some stocks for her; and he, together with Mrs. Koehler, had continued to look after many of the personal affairs of Mrs. Crosby.

At this time, Mrs. Crosby was approximately 78 years of age, with greatly impaired eyesight. The extent of the impairment was in dispute, some of the witnesses stating she could only read the larger headlines in the paper.

This 1922 will was executed in Mrs. Crosby's room at a rooming house which had been secured for her through the instrumentality of Mrs. Koehler. Mrs. Crosby's landlady testified regarding events leading up to the execution of the will. She testified that a short time prior to Mr. Powell's coming to Mrs. Crosby's room, in which the will was executed, Mr. Koehler had been in conference with Mrs. Crosby

for a half or three-quarters of an hour, and thereupon came into the hall and phoned to Mr. Powell "to come on up, that everything was all right." This is disputed by the witnesses for the contestees.

This will was executed in the room of Mrs. Crosby, in the presence of Mr. Powell, Mr. Koehler, and Dr. Weaver; Mr. Powell and Dr. Weaver being witnesses to the will. This will changed the 1919 will only in respect to the $500 legacy to William Shobrook. William Shobrook was not remembered in this will.

Subsequent to the execution of the 1922 will, Mr. Koehler continued to look after all financial matters for Mrs. Crosby, and he, together with his wife, continued to look after her personal wants.

Shortly after the execution of the will in 1919, Mrs. Crosby became ill, and, upon the advice of her physician, was taken to the Scarlet Oaks Hospital. She was there but a short time, when she became dissatisfied, and she was returned to her home. Very soon thereafter, under the direction of Mr. and Mrs. Koehler, she broke up her home and was taken to a rooming house, which had been arranged for by the Koehlers, and, a short time later, was again moved to a rooming house of which Mrs. Buttke was the landlady. It was in the Buttke house that the will in question was drawn. She remained in the Buttke house until some time in 1925, when she was moved again by the Koehler's into a house owned by a person by the name of Carr. It was at the Carr residence, some time in the fall of 1925, that she fell and injured her hip. She was thereupon taken to a hospital, where she lingered until the latter part of January, 1926, when she died.

There is very little evidence of mental incapacity other than such mental decay as would naturally follow a person of the age mentioned, living under the circumstances indicated. The circumstances and her condition would justify a belief that she might be easily influenced in the execution of her will. In the absence of evidence of undue influence, the jury would not have been justified in setting aside the will. The evidence of mental incapacity alone would not have been sufficient.

To amount to undue influence, it must appear that the free agency is destroyed. This may be done by importunity, overpersuasion, or moral coercion of any kind which would constrain a person to do an act against her will.

It must be borne in mind that the exercise of undue influence need not be shown by direct proof. It may be inferred from circumstances.

The circumstances and the relations existing between Mr. Koehler and Mrs. Crosby, and their business and social matters, were fully gone into at the trial.

The testimony of the contestee Koehler, upon being called by the contestant for cross-examination, brought out many facts for the consideration of the jury on the question at issue. The relations existing between Mr. Koehler and Mrs. Crosby were of a most confidential nature. Koehler did not take the stand except on being called on cross-examination by the contestant. The jury probably took this failure to take the stand into consideration in arriving at their verdict. The fact that Mr. Koehler, whose advice in all business and social matters Mrs. Crosby followed strictly, arranged for and was present at

the execution of these wills, in which he was bequeathed a large legacy, undoubtedly had great weight with the jury.

In the trial of the case great latitude was permitted by the court in the examination and cross-examination of the witnesses concerning the life, character, conditions, and the relation existing between the parties, and other facts which might tend to throw light on the execution of the will or affect the mind of Mrs. Crosby concerning it.

As heretofore stated, we cannot go into a complete discussion of the evidence as presented by the voluminous record, but we think enough has been stated to show that the facts involved were purely jury questions. The jury having resolved the facts against the contestees, and against the validity of the will, we will not disturb the verdict and judgment on the weight of the evidence.

The contestees, plaintiffs in error here, predicate a second ground of error on the refusal of the trial court to give seven special charges requested by them.

It appears from the record that, at the close of the evidence, and before argument, the contestees requested 12 special charges. The trial court gave the first 5 and refused the last 7. It may be, considering the number and length of the special charges requested, that the trial court would have been justified in refusing all of them, as being unreasonable in number and length and tending to confuse rather than to enlighten the jury. However, the court saw fit to give the first 5, which, in substance, covered the law applicable to the question at issue.

While some of these charges given contained evi-

dentiary matter, rather than a statement of the law bearing on the ultimate fact, they did go to the jury.

The last 7 special charges were either incomplete, contained the substance already given in the first 5 special charges, or in the main restated the propositions in other language. It would serve no purpose to discuss severally the 7 special charges refused. It is sufficient to say that for the reasons stated in the above general statement, no prejudicial error resulted in the refusal to give the 7 special charges requested.

Objection is made that in several respects the court erred in the rejection and admission of evidence. In a case like this, taking many days to try, with 25 witnesses and over 500 pages of transcript of the evidence, it would be strange indeed if there were no technical errors in the rulings on the admission or rejection of evidence.

One of the points of rejection of evidence stressed by counsel in the brief is the refusal of the court to permit Richard Powell, counsel who had written and witnessed the will in 1917, to answer certain questions. It is argued that the court misconstrued the law applicable to confidential relations between attorney and client, and that the court excluded the testimony on that ground. An examination of the record does not bear out this contention of counsel. It is the law that, where an attorney is a witness to the will of a client, the attorney may give testimony concerning it; that the signing as a witness, at the request of the testator, waives the protection of the rule of confidential communications; but the testimony excluded concerned the will of 1917. It appears that counsel addressed a question to Mr.

Powell about Mrs. Crosby's instructions to him with reference to the drafting of the will of 1917. The court permitted an extended examination of Mr. Powell, and at no time held him disqualified as a witness. It does not appear affirmatively from the record that the rejection was on the ground claimed. The question and answer were as follows:

"Q. And did she give you instructions as to the contents of that will? A. She gave me instructions. She told me that. After being introduced, and after Mr. Koehler left, I asked Mrs. Crosby whether or not she had made up her mind as to what disposition she wanted to make of her property, and she said she had, she had given it a great deal of thought and consideration."

This answer was, on motion, stricken out. The witness was then permitted to give testimony as to the circumstances surrounding the execution of this 1917 will. He described the conduct and appearance of Mrs. Crosby, her mental condition, the fact that he drew her will at her direction, and at her request, and executed the will in his office. Later, the witness was asked: "Q. Will you give us, to the best of your memory, the contents of that will?" Objection to answering the question was sustained. The objection to this question was sustainable on the ground that the matter inquired about was in writing, and the writing was the best evidence of what it contained. The will of 1917 was not produced. There was no evidence that the paper was lost, or that it had been destroyed, or that it could not be found. The record discloses only that the witness did not know where it was. Under the rule

of the best evidence, the question asked was properly excluded.

Objection is made by the contestees to the exclusion by the court of two exhibits, marked for identification 5 and 6. These exhibits were parts torn or taken from letters of Mrs. Crosby, and were identified as such. The court ruled the same out on the theory that the letters were not admissible, as being incomplete. These letters, which were identified, have some independent and complete statements in them, which would make them admissible in so far as the statements are concerned, as bearing on the state of mind of the testatrix; and, had counsel sought to introduce the completed statements only, they would have been entitled to do so. However that may be, the exhibits would be but cumulative evidence, as there is both oral and written testimony to the same point and concerning the same matter as is contained in the fragmentary letters sought to be introduced.

The record is reasonably free of errors in the admission and rejection of evidence. Such as appear occur in the rulings on unimportant questions, and could not have affected the verdict.

This brings us to the general charge, which we have fully considered in the light of the objection made in the brief for the contestees. We find but one serious objection to the general charge. This part of the charge is a paragraph on page 12 of the charge, and is as follows: "I charge you that if you find from a preponderance of the evidence that Laura Crosby was of lawful age, and of sound mind, and under no undue influence, she had the right to dispose of her property as she saw fit, and

was under no legal obligation to leave the plaintiff any part of her estate.''

The vice in this paragraph is the unfortunate use of the phrase ''if you find from a preponderance of the evidence.'' The rest of the paragraph is the law applicable. The substance of this paragraph is contained in contestees' special charge No. 3, requested and given. It was probably in the mind of the court to emphasize the law to the effect that Laura Crosby was under no legal obligation to leave any of her property to the contestant because of blood relationship, and this was, in substance, in special charge No. 3, requested and given. Had the court stated that, if Laura Crosby was of lawful age, and of sound mind, and under no undue influence, she had the right to dispose of her property as she saw fit, the court would have but stated the law. While the paragraph is somewhat confusing, we are of the opinion that, since the court gave a proper charge on the burden of proof, both in the special charges given, and more than once in the general charge, the jury could not have been misled thereby.

Another ground of error is suggested, based on the following incident. It appears that during the trial a witness for contestees, during recess, spoke to some of the jurors about the case. The jurors immediately reported the incident to the court. Contestees moved for a mistrial. The court investigated the matter, and overruled the motion.

The prompt report by the jurors to the court shows that no improper effect was produced by anything said to them. On the other hand, it shows the jurors to have had a high sense of their duty and

obligation. The court did not err in overruling the motion.

We find no prejudicial error in the record, and the judgment is affirmed.

*Judgment affirmed.*

Mills and Cushing, JJ., concur.