**CHASE, ESTATE OF, In Re**

Ohio Appeals, 2nd Dist, Montgomery Co.

No. 1596.  Decided Jan. 15, 1940.

R. N. & N. K. Brumbaugh, Dayton, for appellee.

W. S. Rhotehamel, Dayton, for appellant.

## OPINION

By GEIGER, J.

This cause had its inception in the Probate Court of Montgomery County. On appeal from the Probate Court to the Court of Common Pleas the judgment of the Probate Court was affirmed. Notice was then given of appeal to this court on questions of "law and fact".

Lola Chase died in 1936, intestate, and Roy H. Chase, her husband, was appointed as administrator.  In the course of administration, an inventory was filed scheduling running stock in the Gem City Building & Loan Association, The Fidelity Building Association and The Union Trust Company.  Exceptions were filed to the inventory by Amelia A. Oaks, the mother of Lola Chase.

The first exception was that the running stock in both Associations was not a part of the assets of the estate of the decedent.  There were three other exceptions to the inventory which counsel agreed were well made and the inventory as to them was ordered corrected.  We are not further concerned with these items.

As to the first exception in reference to the running stock, the Probate Court found that the decedent, Lola Chase, in her lifetime made a valid gift to her mother, Amelia A. Oaks, of such stock and that at the time of the death of the decedent, Amelia A. Oaks was the sole owner thereof, and this exception was sustained and it was ordered that said items of running stock be omitted from the inventory and appraisement

and that the order of the court should be authority to the Association to transfer upon their books such running stock account from the name of Lola Chase to the name of Amelia A. Oaks, free from any claim on behalf of the estate.

A motion for new trial was filed and overruled and the order of the court again entered from which notice of appeal to the Common Pleas Court, on law and fact, was given and the cause was submitted to the Common Pleas Court on July 27, 1939, upon the transcript of the testimony and exhibits taken in the Probate Court and that Court found in favor of the appellee and rendered the same judgment as the Probate Court.

A motion was made by the appellant for a new trial, which the court overruled and notice of appeal to the Court of Appeals upon questions of law and fact was given.

The papers filed in this Court are in considerable disorder and were it not for the fact that the leading counsel for both appellant and appellee have died since the final entry in the Common Pleas Court, this Court would be disposed to require counsel to present the papers in a more acceptable manner. We can not refrain from saying that counsel appearing before this Court, where so many cases are heard, would perform a very acceptable service in being exceedingly careful in the presentation of their cases.

We will consider the case under the provisions of §12223-22 GC (2) where it is provided that,

"Whenever an appeal is taken on questions of law and fact in a case in which it is determined that the appellant is not permitted to retry the facts, the appeal shall not be dismissed, but shall stand for hearing on an appeal on questions of law."

There is filed in this Court a bill of exceptions allowed by the Court of Common Pleas presenting the evidence taken before the Probate Court.

An assignment of errors on behalf of the appellant, administrator, is to the effect that the Common Pleas Court erred in the admission of evitrial; that the judgment is contrary to the law and evidence; that the court erred in the admission of evidence offered by the appellee and in the rejection of evidence offered by the appellant, and erred in the affirming of the judgment of the Probate Court; that the Court was without jurisdiction to make any order against Roy Chase as an individual.

The bill of exceptions discloses the testimony of a number of witnesses taken pro and con upon the questions before the court.

The exceptor introduced testimony tending to establish the fact that the decedent, while ill physically, was in the possession of sufficient mental capacity to transact business in relation to the deposits in the Associations, as evidenced by the books and that she, on a number of occasions, expressed the intention of giving the money to her mother; that the money had been earned by her without the assistance of her husband and that she had made other provisions for the husband.

One witness definitely testified as to the act of decedent, either in February or March of 1936 (the decedent dying in June of that year). The testimony of this witness, a niece of the decedent, was, "She took these books from under her pillow and grandmother, Mrs. Oaks, came into the room ard Aunt Lola took these books and she said, 'Here mother are these books, take them and keep them, they are yours' and Mrs. Oaks took the books and left the room with them."

There was testimony of other witnesses that Mrs. Chase, on subsequent occasions, had made statements to the effect that she had given the books and the accounts to her mother.

There was one witness produced by the exceptor whose testimony related to the subsequent declaration of Mrs. Chase that she had transferred the account to her mother. This testimony requires special examination. The testimony of this witness was seriously objected to and we examine it briefly. Dr.

Albert F. Kuhl testified that he was a physician treating the decedent over the months of February, March, April and May of 1936. The question was asked whether he recalled the day when he was making a call on his patient when she talked about the building association accounts in her name. Thereupon counsel for the administrator objected and stated that he wanted the record to show that there was serious question as to the right of the physician to testify in regard to any conversation concerning anything that happened in his presence while he was a physician in the case and the court directed that the record show that the rest of the testimony would be under objections and overruled the objections, §11494 GC being in question. The physician then related that during a call made by him upon his patient there was present the nurse and one of the sisters of the decedent and that Mrs. Chase on that occasion referred to some difficulty she had been having with her husband and a nurse and then said, " 'You know, I have two building and loan books hid in the house and they want them, and I gave them to my mother. You must understand that I have also made adequate arrangements for my husband, at least what I think are adequate arrangements, I had made deposits on another account which he has.' " She further said, " 'These two accounts I want my mother to have and my sisters, for them to divide it up between themselves. I think that is fair and that is the way I want it.' " She further stated, " 'That is the way it is going to be.' " The doctor did not see the books on that occasion. The doctor further testified to the patient's mental capacity as will be discussed later.

The testimony offered by the administrator is largely directed to the fact that the decedent, during the period under consideration, was not mentally capable of making a valid gift and further that the relations between herself and her husband were good and that the husband, during the period of their married life from 1919 until the death of the wife, was employed at good wages and that he was devoted to the wife during her sickness and that generally their marital relations were congenial.

The administrator also offered as a witness, one Dr. C. A. Coleman (R. 117). Dr. Coleman testified from his records to the effect that he was the physician in attendance and in consultation with Dr. Kuhl and he was then questioned as to the mental condition of the patient at the time of his two visits, on March 7 and March 10, 1936, and stated, "I am not in a position to state her mental condition, the two times I saw her, I would not recall her condition that she was in mentally." The doctor then proceeded to testify at length as to her physical condition. No objection was made to the testimony of Dr. Coleman on the ground that it was not competent under the statute.

Both the Probate Court and the Court of Common Pleas rendered comprehensive opinions which are on file with this Court.

The Probate Court held that the overwhelming weight of the testimony supports the contention that at the time the transaction took place the decedent had sufficient mental capacity to make a valid gift and that she had considered the welfare of her husband and had also considered making provisions for her mother; that she made the gift to her mother voluntarily and without any undue influence being exercised and that any presumption of undue influence was rebutted; that the contention of the husband that fraud was practiced upon the decedent by the mother is not supported. The Court found that the exceptor has shown by clear and convincing evidence that a gift inter vivos was made of the two stock accounts and that all of the essential elements of a valid gift inter vivos were present.

The judgment of the Probate Court was sustained by the Court of Common Pleas. In reference to the objection made to the testimony of Dr. Kuhl as being incompetent for the reason that it was a privileged communication under §11494 GC, the Court held that the communication testified to was not

privileged for the reason (1) because it was made to the doctor in the presence of other people and (2) because the communication had no relation to and was not connected with any communication made by the decedent concerning her physical condition. The Court states in his opinion that all the elements of a gift including present intention plus delivery, with relinquishment of all dominion, were in the case.

This case calls for an interpretation of the rules governing the evidence where fiduciary or confidential relationships exist between the parties to a transaction. In this case the grantor having died, the administrator acts as her representative. The right to cancel a gift from a donor made under undue influence descends to the administrator, if it existed in the donor unimpaired at the time of her death. **Czako v Orban, 133 Oh St 248.** It is claimed in this case that the donor being in poor health was under the dominance of her mother and that there is an inference of legal fraud which must be overcome by the donee by clear and convincing evidence.

We have had occasion recently to examine the law touching the question of transfers made under undue influence or as a result of a confidential or fiduciary relation. We will not take the time to restate these cases except to cite them. They may be found in the case of **Walter K. Simmons v George Becker, Administrator,** in a decision rendered by this court December 30, 1939.

**Berkmeyer v Kellerman, 32 Oh St 239;**
**Wills v Baker, 75 Oh St 291;**
**McAdams v McAdams, 80 Oh St 232;**
**Sheffer v Sheffer, 16 Oh Ap 305;**
Taylor v Taylor, 8 Howard's Report (U. S.) 183;
Story on Equity Jurisprudence Vol 1, Section 307;
Housewright v Stienke, 327 Ill. 308;
Giers v Hudson, 102 Arkansas 232;
Shackleford v Shackleford, 11 A.L.R., 730 and cases cited.

**Finney v Morehouse, 27 Oh Ap 499;**
**Atwater v Jones, 24 O. C. C. (N.S.) 328.**

Many of these cases support the right to set aside the deed on account of undue influence. In the case at bar the transfer is sought to be supported.

The case also involves the question as to what will constitute a valid gift inter vivos. The requisites necessary to support such gift are discussed in **Bolles v Trust Company, 132 Oh St 21,** and **Streeper, Administrator v Myers, et, 132 Oh St 322.** These cases are familiar to counsel and it is not necessary to further discuss them.

We think however that the question of the competency of the evidence of Dr. Kuhl requires some further consideration.

**Sec. 11494 GC** provides:

"The following persons shall not testify in certain respects: an attorney concerning a communication made to him by his client in that relation or his advice to his client; or a physician concerning a communication made to him by his patient in that relation or his advice to his patient. But the attorney or physician may testify by express consent, etc."

**Baker v Industrial Commission, 135 Oh St 491,** holds that under the Section, privileged communications between a patient and physician may be either (1) by exhibition of the body (2) oral or written communication between the patient and physician. The physician may not testify in respect to either unless there is express consent by the patient or a waiver in reference thereto.

Myers, J. delivering the opinion of the court, says on page 496, in substance, that in respect to oral communications, a patient when ill may be delirious or physicially and mentally weak and in that condition talk about subjects and reveal facts which in normal conditions he would not do. In regard to any such communication, the patient is at a decided disadvantage and is therefore in that respect also protected by the

statute. The reason for protecting such oral communications is much more compelling than mere protection against the physician testifying about the condition or health of the patient. This reason is also more compelling than in the relationship of attorney and client where the latter is in full possession of his mental faculties. The patient in making oral communication may have been so ill and delirious that he was mentally irresponsible. The very communication or statement made might be false by reason of his illness and irresponsible condition. It would be utterly unfair to permit a physician to repeat such delirious statements unless the patient had given express consent. It is claimed that this decision makes Dr. Kuhl incompetent as a witness.

The preliminary statement of the section is,

"The following persons shall not testify in certain respects: or a physician concerning a communication made to him by his patient in that relation, or his advice to his patient."

It would seem that the statute does not attempt to disqualify a physician as a competent witness to all communications made to him by his patient, but only to those communications made to him by the patient in that relation. The evidence sought to be excluded had no connection with the relationship of doctor and patient but was a voluntary communication to the doctor in the presence of other witnesses as to her possession of the building and loan books; of the fact that she had made adequate arrangements for her husband and the statement "These two accounts I want my mother to have and my sisters, for them to divide up between themselves. I think that this is fair and that is the way I want it." The doctor also testified "Her mental condition was normal, she was rational." The statement of the doctor as to her mental condition may possibly fall within the prohibition of a "communication made to him by his patient in that relation" inasmuch as his judg-

ment of her mental condition was based upon the examination he had made of her as a physician.

The first syllabus of Baker v Industrial Commission states that privileged communications may be oral or written communications and that "the physician may not testify in respect to either unless there is express consent, etc." But the Court is there speaking of "privileged" communications, that is, communications made in the relation of patient and physician.

There are a number of decisions which must be modified if there is to be such an application of the principles stated in Baker v Industrial Commission, as is urged by the administrator.

See as to related cases:

Heiselmann v Franks, 48 Oh Ap 536;
Ausdenmoore v Holzback, 89 Oh St 381;
Swetland v Miles, 101 Oh St 501;
Knepper v Knepper, 103 Oh St 529;
Collins v Collins, 110 Oh St 105.

There are other cases which might be further examined, but we arrive at the conclusion that the principles laid down in Baker v Industrial Commission do not make the testimony of a physician incompetent as to communications made to him by his patient which did not have reference to the relation of physician and patient. The testimony given by the physician in relation to the passbooks is not forbidden by the statute.

On the review of the entire record, we are of the opinion that the exceptor in this case has sufficiently established a gift from her daughter to her, to support the judgment of the court ordering that the items in question be stricken from the inventory and restored to the name of Amelia Oaks.

Judgment accordingly.

HORNBECK, PJ. & BARNES, J., concur.