**PETERSON, et, Plaintiffs-Appellees, v. MITCHENER, et., Defendants-Appellants.**

Ohio Appeals, Second District, Greene County.

No. 492.   Decided January 18, 1947.

Miller & Finney, Xenia, for plaintiffs-appellees.

Morris D. Rice, Osborn, James M. Matthews, Osborn, for defendant-appellants.

## OPINION

By WISEMAN, J.

This is an appeal on law and fact from the judgment of the Common Pleas Court of Greene County, Ohio. This is an action in partition, filed June 7, 1945, wherein the plaintiffs, Hattie Peterson and Margaret Long, and the defendants, Lawrence Mitchener, Florence Mitchener, Vergo Mitchener, Thurman Mitchener, Alice Mendenhall, Walter Mitchener and Horace Mitchener, were all children of Samuel C. and Margaret Mitchener.

The record shows that Samuel C. Mitchener died intestate on July 3, 1941, owning the undivided one-half interest in said real estate; that at the time of his death he was survived by his widow, Margaret Mitchener, and nine children; that administration of his estate was opened and Walter Mitchener and Florence Mitchener were appointed as Administrator and Administratrix of said estate; that on October 23, 1942, the Administrator and Administratrix filed a petition in Probate Court of Greene County, Ohio, to sell said lands to pay debts; that a controversy arose between the children relative to the disposition of said property; that finally an agreement was entered into on the 17th day of April, 1944, wherein all the children agreed to allow the mother to occupy the farm and enjoy the use of said real estate during her natural life; that thereupon the land sale action which was pending in the Probate Court was dismissed; that on July 3, 1944, a certificate of transfer was filed in the Probate Court of Greene County, transferring the undivided one-half interest in said farm, which was owned by the decedent, to the nine children and the widow, each child being entitled to two-twenty-sevenths (2/27ths) interest, and the widow entitled to one-third (1/3rd) interest.

On July 6, 1944, Margaret Mitchener, the widow, transferred to Walter Mitchener, a son, and Florence Mitchener, a daughter, all her interest in said farm, which consisted of the undivided one-half (1/2) interest which she owned at the time of her husband's death and also one-third (1/3rd) interest which she took under the intestate law in the one-half (1/2) which was owned by her deceased husband.

On April 1, 1945, the widow, Margaret Mitchener, died intestate, leaving the same nine children surviving her as her heirs at law.

As a defense to the action in partition, the defendants claim that by virtue of said deed Florence Mitchener and Walter Mitchener were each entitled to ten-twenty-sevenths (10/27ths) interest in said real estate and the other seven children were entitled to a one-twenty-seventh (1/27th) interest.

The case was submitted to this court on the record taken in the trial court, together with some additional testimony which was taken before this court. The sole question for this court to determine is whether or not the deed which was executed by Margaret Mitchener to her two children, Florence and Walter Mitchener, is a good and valid deed. All other issues made by the pleadings relative to consideration, execution and delivery of the deed, have been abandoned. Plaintiffs contend that said purported deed "was secured by the grantees through misrepresentation and fraud, and that undue influence was brought to bear upon the grantor in securing the execution thereof; that said deed is null and void and of no effect."

We have been furnished with the written opinion of the trial Judge, in which he has reviewed very ably, but concisely, the evidence introduced, and concludes that the mother executed the deed "under a mistaken idea as to what the facts were as to her two children and that in all probability she would not have done this had she known the true facts. The Court thinks that she did it under duress and fraud, and the deed is set aside and held for naught." We approve of the judgment of the trial court. The trial judge did not elaborate on the evidence adduced in support of his conclusion that the transaction was vitiated for fraud.

After consideration of the entire record this court is of the opinion that there is ample evidence to support the finding of the trial court, and this court so finds that Margaret Mitchener was induced to execute the deed to her two children through a misrepresentation of the true facts which existed at the time, and was unduly persuaded by the two grantees in said deed, Florence and Walter Mitchener.

The record shows that up until the father's death all the members of the family were friendly. That after the death of the father several family meetings were held, at which time there was discussed the matter of the administration of the estate of the father and the eventual disposition of the real estate. The Federal Land Bank of Louisville held a mortgage on said real estate, which complicated the matter. During these negotiations a difference of opinion arose between the children, the two petitioners, Hattie Peterson and Margaret Long, taking the position that their mother desired to remain on the farm the rest of her lifetime, and that the children, in order to effect that purpose should enter into an agreement so that she would be assured a home on the farm and have the use of said farm during her lifetime., The record shows that the mother was desirous of accomplishing this purpose. All the children testified that this was the mother's desire. However, several of the children, including Walter Mitchener, Florence Mitchener and Vergo Mitchener, took the position that all the children should deed their entire interest, outright, to the mother, placing the entire ownership of the farm in the mother's name, so that she could dispose of the farm in any way she saw fit. During these negotiations, and even prior to the father's death, information had come to several of the children that Florence Mitchener and Walter Mitchener had designs on securing the farm the moment the father died. For this reason the petitioners herein, Hattie Peterson and Margaret Long, objected to placing the entire ownership of the farm in the mother's name. It was their purpose to protect the mother in her desire to live on, and have the use of, the farm during her lifetime. The evidence shows that these two petitioners believed that Florence and Walter Mitchener would induce the mother to transfer the farm to them if she had the power to do so.

The evidence further shows that these two petitioners repeatedly urged that all the children enter into a written agreement whereby they would give the mother the right to live on said farm and the exclusive use of said farm during her lifetime. The execution of this written agreement was opposed in the first instance by Florence and Walter Mitchener. These two children refused to sign the instrument until they were assured that the execution of such instrument would not deprive the mother of making a deed to that interest which she already possessed. Upon being assured by Mr. Rice, one of the counsel in this case, who was present at a family gathering, that the execution of this agreement would not deprive the mother of her right to transfer her interest, Florence and

Walter Mitchener agreed to sign, and, thereupon, all the children entered into said agreement.

It is significant to note that at that gathering, when the question came up as to the right of the mother to make a transfer of her interest, Mr. Rice made the statement, in answer to a question, put by Vergo, as follows: "It might be possible, but you still would have your consciences to live with."

The record shows that the mother took little or no part in said negotiations, that the discussions and differences arose between the children, and that the feeling between the two groups became very bitter. That the mother had expressed herself at different times that she desired all of her children to share equally in said farm after the death of her husband and herself. That about the time the agreement was executed a change in attitude was noticed toward these two petitioners on the part of the mother. That the mother seemed to be confused as to matters involving the farm and estate. That after the agreement was signed she still worried because the matter was not setted, indicating a disturbance by someone.

The record shows that it was the belief of the children, at the time the agreement was executed, that the provisions of the agreement would be carried out and that the matter should be held in status quo under said agreement until the death of the mother; however, within a few weeks after this agreement was entered into a deed passed between the mother, who at this time was 81 years of age, and Florence and Walter Mitchener. This transaction was not disclosed to any of the children, with the exception of Alice Mendenhall, who testified that she had knowledge of said transfer. The deed was not recorded until after the death of the mother.

There is also evidence in the record, which is not refuted, that at times when these two petitioners would call at the home to converse with the mother, Florence and Walter Mitchener and Vergo Mitchener and Vergo's wife, would see to it that the mother was never left alone in conversation with these two petitioners. There is also evidence in the record that at times when the mother would begin a conversation with respect to the farm Florence would shake her head or frown and the mother would change the conversation, and at times Florence would change the conversation.

There is ample evidence to support the conclusion that Florence and Walter Mitchener encouraged the mother in the belief that it was these two petitioners, Hattie Peterson and Margaret Long, who were attempting to sell the farm, and that it was Florence and Walter who were opposing the sale, whereas, in truth and in fact, it was Florence and Walter Mitchener,

as Administratrix and Administrator, who brought the land sale proceedings and Hattie and Margaret were at all times attempting to save the farm for use of the mother during her lifetime.

There is ample evidence to indicate that the mother was misled in the belief that these two petitioners were opposing her desire to retain the farm for her residence during her lifetime, and that Florence and Walter Mitchener were doing everything in their power to protect her in effecting her purpose to retain the farm.

Florence Mitchener admitted that the change of attitude on the part of the mother toward these petitioners arose by reason of her belief that they were attempting to sell the farm.

Both Florence and Walter Mitchener always resided on the farm and lived with the father and the mother until Walter's marriage. At the time of his marriage it was agreed that he should farm on the thirds and that the father should move off the farm, which he did. However, within about six months the father, mother and Florence moved back onto the farm, living in the small house, the father continuing to do work on the farm as he did formerly. The record shows that the agreement to farm on the thirds was never carried out, and that from 1930, the year Walter was married, until the death of the father, all the income of the farm was put into one fund, the father taking care of the checking account for a number of years, after which his account was closed, and thereupon Walter opened up a checking account in his name. The living expenses of the father, mother, Florence and Walter all came out of this fund; payments were made on the mortgage, and all purchases of machinery or equipment for the farm were paid out of this fund.

Florence at all times lived with the father and mother, and after the death of the father continued to live with the mother. From 1924 up until Walter married, Walter lived with the father and mother, and after his marriage in 1930, he lived in the large house on the farm, the father, mother and Florence lived in the small house. A close family relationship continued to exist up until the mother died. They worked and lived as one family unit. The mother reposed confidence solely in Florence and Walter.

The court cannot avoid the conclusion that Florence and Walter bore a confidential relationship to the mother, and, as such, owed a duty to her to exercise the utmost good faith in any transaction which took place between them. We are convinced that, based on the evidence in this case, Florence and Walter Mitchener did not exercise the utmost good faith

toward the mother in effecting the transfer of the real estate; they owed a duty to make a true disclosure of the facts, which they failed to make; on the other hand, the evidence shows that they encouraged her in a wrong belief as to the facts; they used these means to induce the mother to make a deed of her interest in the farm to them which she otherwise would not have done. Such conduct and acts show the exercise of undue inflence. The conclusion that they pursued this course of conduct is supported by the fact that both Florence and Walter denied on the witness stand that they had brought the land sale proceeding, which was a matter of record.

For this reason this court finds the evidence to be clear and convincing that the mother was unduly inflenced in the execution of said deed, and that the acts of Florence and Walter Mitchener was a breach of that duty and trust which they owed to the mother because of the confidential relationship which existed between them. Equity will not protect them in their wrongful act. Equity looks with extreme jealousy on transactions between parties who stand on a confidential relationship. Unless the person who is benefited can show the utmost good faith, that the benefit was conferred with full knowledge of the circumstances, it will be set aside. In equity the conduct of Florence and Walter amounts to fraud which requires the court to set the deed aside. See 19 O. Jur., 326, 345, 509; 16 Am. Jur. 462, 660; **Berkmeyer v Kellerman, 32 Oh St 239, 251, 253; Wasmuth v Prugh, 31 Abs 56, 60, 61; In Re Estate of Chase, 31 Abs 111, 114.**

Under such a state of facts the court is not permitted to measure the fairness of the transaction or indulge in any presumption as to whether the grantees were more equitably entitled to the property than the other children.

Accordingly, the court orders the deed executed July 6, 1944, set aside and held for naught; finds that each child is vested with a one-ninth (1/9th) interest in said land; that the plaintiffs are entitled to an order of partition, which is hereby granted; that the Federal Land Bank of Louisville has a lawful mortgage on said premises as set up in its answer.

No order is made respecting an accounting of Walter Mitchener as tenant.

An entry may be drawn accordingly.

HORNBECK, PJ, and MILLER, J, concur.