ROSS, Appellee,

v.

BARKER, Appellant.

[Cite as *Ross v. Barker* (1995), 101 Ohio App.3d 611.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 14554.

Decided March 8, 1995.

*Lester R. Thompson,* for appellee.

*James I. Weprin,* for appellant.

GRADY, Judge.

This is an appeal by an executor of a decedent's estate from an order of the probate court requiring the executor to repay to the estate funds expended by her from joint and survivor accounts owned by the executor and the decedent during the decedent's lifetime, and to pay over to the estate funds remaining in those survivorship accounts after his death. The court's order was based on its finding that the decedent did not understand the nature of joint and survivor accounts and was either misled or unduly influenced to place his assets in them.

On appeal, the executor argues that the record fails to support the trial court's conclusions concerning the issues of competence and undue influence, and that

the court should have found that the decedent intended to make gifts to the executor of these amounts.

We find that the record supports the probate court's order, and we will affirm.

## I

The decedent, Carlos Chaffins, was born in 1906, and lived with his wife in Columbus until her death in April 1989. Chaffins was confined to a wheelchair and physically dependent on others to care for him. He was illiterate, had poor eyesight, and required a hearing aid. With the passing of his wife, Chaffins required full time care and, therefore, moved in with his son. However, Chaffins's relationship with his son deteriorated after Chaffins discovered that his son had misappropriated funds from Chaffins's wife and had commenced proceedings to place Chaffins under a guardianship. As a result, Chaffins's twin daughters, Emma Ross and Eva Barker, moved their father to Dayton in May 1989.

Chaffins first resided with Ross, but after a dispute concerning the apportionment of the care duties he moved in with Barker. Chaffins lived with the Barkers from July 1989 until shortly before his death on June 1, 1991. A codicil to his will which Chaffins executed in April 1990, left $5 to his son and directed that the rest of his estate be distributed equally between his two daughters.

While in the Barkers' care, Chaffins received the proceeds from the sale of his house in Columbus. These proceeds were placed in a short-term certificate of deposit in September 1989 in the names of Carlos Chaffins and Eva Barker. The CD matured in December 1989, and the balance of the CD, $42,276.41, was deposited into a joint and survivorship checking account in the names of Eva Barker and Carlos Chaffins. By the end of December the balance in this joint account was depleted to $1,130.39.

The history of the funds during this interval is not entirely clear. Twenty thousand dollars was withdrawn from the joint and survivorship checking account and placed in the Barkers personal checking account, to which they then added Chaffins's name as an owner. Another $20,000 was to go into a new joint and survivorship CD in the names of Barker and Chaffins. However, approximately $6,000 of this money was used to purchase a truck for Eva Barker prior to the purchase of the CD. Accordingly, the value of the CD was $14,000. Of this $14,000, approximately $3,000 was spent for funeral expenses, leaving approximately $11,000 in the account.

Chaffins received over $2,000 each month in Social Security and pension income, all of which was also deposited into the Barkers personal checking account.

The parties have stipulated the total amount of Chaffins's funds involved in these transactions was $59,972.83.

Barker, as executor of Chaffins's estate, listed the inventory of the estate as consisting of only $11,000 from the CD. An amended inventory was then filed which did not include this $11,000.

Ross requested Barker to ask the probate court to determine whether Barker had any duty to account for the funds withdrawn from the joint accounts prior to Chaffins's death. Barker failed to do so. Ross then instituted this action pursuant to R.C. 2107.46, seeking the same direction from the probate court.

In her complaint, Ross alleged that Chaffins "was unable to understand the nature of his actions and unable to form the specific intention necessary for the creation of a joint and survivorship account under Ohio law or to make gifts to the Defendant, Eva P. Barker." As relief, Ross requested that Barker be ordered to (1) account for any funds she withdrew from the accounts, (2) to return to the estate any funds that were not expended for Chaffins's benefit, (3) for attorney fees, interest and costs, and (4) any and all other relief to which she might be entitled.

The matter was heard by the probate court, which took evidence from the parties and other family members. The court also heard the opinions of medical experts concerning Chaffins's health and competence. The court filed its findings of facts, and entered the following conclusions and order for relief:

"Under the evidence submitted to this Court, and the exhibits, the Court does find that the decedent did not understand nor did he have explained to him by anyone the ramifications of a joint and survivorship account, and in view of the will and codicil subsequently executed, he felt he had assets to be distributed, and due to his condition he was either misled or unduly influenced in signing away his assets.

"The Court finds against the defendant and in favor of the estate of Carlos Chaffins in the amount of $59,972.83."

Defendant Eva P. Barker filed a timely notice of appeal.

## II

Barker presents three assignments of error for review. The first assignment of error states:

"The trial court erred in finding that Mr. Chaffins did not understand the nature of a joint and survivorship account."

In this assignment, Barker essentially argues that the judgment of the trial court is against the manifest weight of the evidence. An appellate court

must evaluate the findings of the trial court under a presumption that those findings are correct. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. Further, so long as there is "some competent, credible evidence" to support the judgment it will not be reversed. *Id.; C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

The probate court heard the testimony of a number of witnesses, including family members, doctors and social acquaintances, all addressing the issue of Chaffins's competency. We must review the evidence in light of the fact that the trial court is in the best position to weigh the credibility of these witnesses. *Seasons Coal Co., supra.*

The testimony of family and acquaintances revealed that Chaffins had never handled his finances; his wife did. The testimony also demonstrated beyond dispute that Chaffins was illiterate and had poor eyesight. Chaffins did not write checks, and the testimony indicated that he did not know how. In fact, he only learned to sign his name in 1953, when he moved to Ohio.

Chaffins's personal psychiatrist, Dr. Patwa, opined that Chaffins was competent and could understand the nature of a joint and survivorship account. Dr. Frontista, Chaffins's personal physician, also testified that Chaffins was competent and that Chaffins had no physical limitations, despite the fact that Chaffins was wheelchair-bound. The trial court found that Dr. Randall, the court-appointed psychiatrist for the earlier guardianship proceedings, had opined that Chaffins had a "dependent" personality and that Chaffins "did not have the capacity to understand the concept of joint and survivorship bank accounts."

The weight the trial court gave some of this testimony is evident from several brief colloquies throughout the trial.

"COURT: How did he understand what a joint and survivorship checking account is? He couldn't read. He couldn't see.

"BARKER: He had it with mom all of his life.

"COURT: He did not start a checking account. He just put his money in her account. And his name was added as a depositor * * *."

When Barker's counsel attempted to buttress his argument on the strength of Dr. Frontista's testimony, the trial court responded:

"COURT: But nobody tells me that the doctor says he's in great shape, but didn't even know he was in a wheelchair. I'm wondering where in the hell he saw this man."

Ross brought this action for a declaratory judgment pursuant to R.C. 2107.46, which provides:

"Any fiduciary may maintain an action in the probate court against creditors, legatees, distributees, or other parties, and ask the direction or judgment of the court in any matter respecting the trust, estate, or property to be administered, and the rights of the parties in interest.

"If any fiduciary fails for thirty days to bring such an action after a written request from a party in interest, the party making the request may institute the suit."

■ "A joint and survivorship account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." *In re Estate of Thompson* (1981), 66 Ohio St.2d 433, 20 O.O.3d 371, 423 N.E.2d 90, paragraph one of the syllabus. Where those parties stand in a confidential relationship, the use or withdrawal from the account by one party of funds owned by the other will be set aside, unless the person benefitted can show the utmost good faith and that the benefit was conferred by the other party with full knowledge of the circumstances concerned. *Peterson v. Mitchener* (1947), 79 Ohio App. 125, 34 O.O. 490, 71 N.E.2d 510.

■ Funds remaining in a joint and survivorship account upon the death of one party transfer directly to the survivor by operation of their contract creating the account. The opening of the account, absent proof of fraud, duress, undue influence, or lack of capacity on the part of the decedent, is conclusive evidence that the decedent intended to benefit the survivor. *Wright v. Bloom* (1994), 69 Ohio St.3d 596, 635 N.E.2d 31. The rights of the survivor may not be defeated by extrinsic evidence that the decedent did not intend to create in the survivor a present interest in the account during their lifetimes. *Id.*

■ The funds deposited to these accounts by Chaffins did not become Barker's property during his lifetime unless Chaffins intended to transfer them to Barker as her property. Absent clear and convincing evidence of that intent, and in view of the confidential relations between them, Barker's withdrawal and use of those funds is presumed to have been to her own benefit, not the benefit of Chaffins. Barker may rebut that presumption, but to do so she must demonstrate that in obtaining the benefit she acted in the utmost good faith and that Chaffins conferred the benefit on her with a full knowledge and understanding of the circumstances.

Barker testified that the funds she withdrew were spent for her father's care and in ways that he desired. These included living expenses, attorney fees, a truck for Barker, and funeral expenses. The truck cost approximately $6,000, and Chaffins's funeral expenses were $3,000, according to Barker. She did not

show how the remainder was distributed among these other purposes, and she produced no documentation to substantiate her testimony.

Except for the $3,000 she spent for Chaffins's funeral, Barker's evidence fails to demonstrate, by a preponderance, that she did not benefit from the withdrawal of Chaffins's funds, or that Chaffins had full knowledge of them. As the trial court noted, the depletion of funds was inconsistent with Chaffins's last will and testament.

Any evidence that Chaffins intended that Barker have the funds she withdrew from these accounts does not rise to the level of clear and convincing evidence. There is, on the other hand, competent, credible evidence that Chaffins did not understand the nature of a joint and survivorship bank account when Barker opened those accounts in their names and withdrew funds from it. Chaffins was elderly, infirm, and illiterate. He had never handled his funds and, according to the testimony, wouldn't know how to write a check. The lack of evidence that Barker or anyone else explained these matters to Chaffins permitted the probate court to order Barker to return the funds she withdrew during Chaffins's lifetime, pursuant to R.C. 2107.46.

The foregoing finding that Chaffins "did not understand nor did he have it explained to him by anyone the ramifications of a joint and survivorship account" cannot, however, be used to defeat Barker's rights as survivor to the balance remaining in those accounts. Chaffins's intent to so benefit Barker is conclusively demonstrated by the fact that these accounts were opened. *Wright v. Bloom, supra.* Further, the finding does not demonstrate that Chaffins had a lack of *capacity* to create that benefit, that is, that Chaffins was not legally qualified, was incompetent, or that he lacked the power or fitness to understand the nature of these accounts had that been explained to him. However, this does not prevent the probate court from ordering Barker to pay over the survivorship funds, as our discussion of the next assignment of error demonstrates.

The first assignment of error is overruled.

The second assignment of error states:

"The trial court erred in finding that Mr. Chaffins was unduly influenced."

This assignment of error also presents a manifest weight of the evidence issue, and so we are again concerned with whether there is competent, credible evidence to support the trial court's finding.

The finding of undue influence has significance in relation to Barker's right to the funds remaining in the survivorship accounts at Chaffins's death. Undue influence, fraud, or duress may defeat those rights. *Id.*

What rises to the level of undue influence is difficult to define. Undue influence has been defined as "any improper or wrongful constraint, machination, or urgency of persuasion whereby the will of a person is overpowered and he is induced to do or forbear an act which he would not do or would do if left to act freely." *Marich v. Knox Cty. Dept. of Human Serv.* (1989), 45 Ohio St.3d 163, 543 N.E.2d 776, quoting Black's Law Dictionary (5 Ed.1979) 1370. It has also been described as a form of influence that would destroy the free agency of the mind and cause people to act against their will. *Raymond v. Hearon* (1928), 30 Ohio App. 184, 164 N.E. 644; *Rich v. Quinn* (1983), 13 Ohio App.3d 102, 13 OBR 119, 468 N.E.2d 365.

In order to prove undue influence, Ross was required to show (1) that Chaffins was susceptible to influence, (2) that another had the opportunity to exert the influence, (3) that the improper influence was in fact exerted or attempted, and (4) events or results showing the effect of such influence. *West v. Henry* (1962), 173 Ohio St. 498, 20 O.O.2d 119, 184 N.E.2d 200.

The record demonstrates that Chaffins was susceptible to influence, due to his personality and infirmities, and that Barker had the opportunity to exert such influence. However, there is no evidence at all that an improper influence on Chaffins was attempted or exerted by Barker. Therefore, the finding of undue influence is against the manifest weight of the evidence.

The trial court also found that Chaffins was "misled" into opening the accounts concerned, that is, that Barker had employed fraud to obtain that result.

Undue influence and fraud are very closely associated in reference to the contest of a will, and the distinction between fraud and undue influence as ground for contesting a will is often slight. In fact, the words "fraud," "duress," and "undue influence" are frequently used synonymously in will contests, and the same considerations may be involved whether the ground of contest is one or the other. 31 Ohio Jurisprudence 3d (1981), Decedents' Estates, Section 404.

Fraud is sometimes said to consist of any kind of artifice employed by one person to deceive another, or of some willful act or omission which is unconscientious and a violation of good faith, and by which one person obtains an undue advantage over another. By fraud is meant all surprise, trick, cunning, dissembling, and other unfair ways that are used to cheat another. It is a deception deliberately practiced with a view to gaining an unlawful or unfair advantage. 50 Ohio Jurisprudence 3d (1984), Fraud and Deceit, Section 1.

■ There is competent, credible evidence from which the probate court could find fraud to have occurred here. Chaffins was elderly and in poor health when he moved into Barker's home. He was dependent on her for all his needs. He was also largely isolated from the other members of his family. Chaffins was

illiterate. He had never handled his own financial affairs. He had a "dependent" personality. Such a person is easily imposed upon. Barker, as his daughter, had a duty to deal with him conscientiously and in good faith. By placing his funds into her own accounts, and into others which she owned with her father jointly, Barker obtained an undue advantage over him. In that circumstance fraud is demonstrated, and that fraud defeats Barker's survivorship rights in these accounts.

The second assignment of error is sustained because there is no competent, credible evidence to support the finding of undue influence. The resulting error is harmless, however, in view of the finding of fraud.

The third assignment of error states:

"The trial court erred by not finding that Mr. Chaffins, during his lifetime, gave some of his portion of the funds in the joint and survivorship account to the Barkers."

Barker argues that the trial court erred in failing to make a finding regarding gifts. However, this declaratory judgment action was instituted pursuant to R.C. 2107.46 by Ross to compel Barker to account to the estate for funds that may have been wrongfully withdrawn from a joint and survivorship account prior to Chaffins's death, and for other relief. Barker did not assert that any of the funds concerned had passed to her as gifts from Chaffins during his lifetime. In fact, she disclaimed that possibility in her testimony.

In order to resolve the determinative issues before it, the trial court was not required to first find that the disputed funds were not gifted away during Chaffins's lifetime. Accordingly, the issue of gifts was not before the court or determinative of the declaratory relief requested.

The third assignment of error is overruled.

### III

We have overruled the first and third assignments of error, but have sustained the second assignment of error. That error is, nevertheless, harmless error in respect to the court's order, which is supported by its finding of fraud. The judgment of the trial court will be affirmed.

*Judgment affirmed.*

BROGAN, P.J., and WOLFF, J., concur.