In re Trisha FLETCHER, Debtor.

Dean Adam, et al., Plaintiffs,

v.

Trisha Fletcher, Defendant.

No. 05–3391.

United States Bankruptcy Court,
N.D. Ohio.

May 9, 2006.

Jerome R. Doute, Lima, OH, for debtor.

Ericka S. Parker, Toledo, OH, for trustee.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Trial on the Plaintiffs' Complaint to Determine Dischargeability. The Plaintiffs bring their complaint pursuant to 11 U.S.C. § 523(a)(2)(A). The Court has now had the opportunity to review the arguments of the Parties, the exhibits, as well as the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the Plaintiffs have not sustained their burden under § 523(a)(2)(A), and thus the debt at issue is Dischargeable.

## FACTS

In 2005, the Defendant, Trisha Fletcher, sought relief in this Court under Chapter 7 of the United States Bankruptcy Code. Neither of the Plaintiffs was listed in the Defendant's petition as creditors. The Plaintiffs disagreed with this tacit assertion, commencing the instant adversary proceeding under § 523(a)(2)(A) to recover the value of certain transfers made to the Defendant. On this action, the following constitute this Court's finding of facts and conclusions of law in accordance with Bankruptcy Rule 7052.

The Plaintiff, Dean Adam, and the Defendant, Trisha M. Fletcher, have known each other for a number of years. Although the exact nature of their relationship is somewhat cryptic,—evidence was presented that the Parties drank together and, for a time, Mr. Adam stayed at Ms. Fletcher's home—it can be safely stated that, at the very least, the two were friends.

During the course of their friendship, Mr. Adam would, on occasion, make purchases for the Defendant's benefit. For the most part, these purchases were of small value; for example, Mr. Adam would buy groceries for the Defendant. In early November of 2004, however, Mr. Adam made a number of purchases of significant value for the benefit of the Defendant. Most notable, Mr. Adam purchased a stove, refrigerator, and various items of furniture for the Defendant's home; the total value of these purchases was approximately $7,000.00. The Defendant explained that Mr. Adam made these purchases because many of her previous possessions had been destroyed in a fire.

The co-plaintiff, Theresa Sherrick, is the daughter of Mr. Adam, and is presently his legal guardian, with Mr. Adam having been adjudged to be mentally incompetent in January of 2005. (Pl.Ex. B). As his legal guardian, Ms. Sherrick seeks to recover from the Defendant the value of the property Mr. Adam purchased for her benefit. According to Ms. Sherrick, this is warranted because the Defendant "took advantage" of Mr. Adam's diminished mental capacity. On this assertion, Ms. Sherrick gave this account of her father's mental state.

Mr. Adam, who is approximately 70 years of age, has over the past few years been afflicted with bipolar disorder and dementia. His history of mental problems has also been accompanied by a longstanding problem with excessive drinking. As stemming from these conditions, Mr. Adam's behavior, starting in mid–2004, became increasingly erratic. Of import, Mr. Adam began to spend his life savings at an unsustainable pace. This spending included not only making purchases for the benefit of the Defendant, but also included Mr. Adam making purchases of luxury items for himself, for example, an expensive motor vehicle. It was then based upon this increasingly erratic behavior that caused Ms. Sherrick to file, in December of 2004, the application to have Mr. Adam declared incompetent and have herself appointed legal guardian over his estate and person. (Pl.Ex. A–1).

## LAW

### 11 U.S.C. § 523. Exceptions to Discharge.

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a

statement respecting the debtor's or an insider's financial condition[.]

### DISCUSSION

The Plaintiffs' complaint to determine Dischargeability is brought under § 523(a)(2)(A) of the Bankruptcy Code. Generally, this section excepts from the scope of a bankruptcy discharge those debts incurred as the result of a debtor's dishonest acts. *Cote v. Catherman (In re Catherman)*, 331 B.R. 333, 336 (Bankr. N.D.Ohio 2005). In opposition to the applicability of § 523(a)(2)(A), the Defendant made, as a focal point of her defense, this observation: the transfers of property to her by Mr. Adam were simply gifts, nothing more.[1] As now explained, this observation carries significant weight.

In its opening proviso in paragraph (a), and hence applicable to all matters of nondischargeability, § 523 provides: "A discharge ... does not discharge an individual debtor from any *debt*[.]" (emphasis added). Section 523 thus limits its scope to determinations regarding debts. A debt, however, is the antithesis of a gift.

■■■ Ohio law defines a gift as a "voluntary transfer of property to another made gratuitously and without consideration." *Three Bills, Inc. v. Parma*, 111 Ohio App.3d 740, 745, 676 N.E.2d 1273, 1276 (1996), *citing* BLACK'S LAW DICTIONARY 688 (6th ed.1990). By comparison, bankruptcy law defines a "debt"hence fixing the reach of § 523(a)—as "liability on a claim." 11 U.S.C. § 101(12). A "claim," in turn, simply means a "right to payment" which the Supreme Court has said "is nothing more nor less than an enforceable obligation." § 101(5); *Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 559, 110 S.Ct. 2126, 2131, 109

L.Ed.2d 588 (1990). It therefore follows that, unlike a gift which is accomplished voluntary and without consideration, a "debt" has as its key attribute a mutual exchange of value. Additionally, a debt is dissimilar from a gift, which is gratuitous, in that for the failure of performance, a remedy is available through legal process.

In placing these legal distinctions against the various exchanges at issue, two distinctions come to prominence which bend heavily toward finding that Mr. Adam intended his transfers to the Defendant to be completely gratuitous: (1) the friendly nature of their relationship; and (2) the material losses suffered by the Defendant to her household property. Simply stated, it seems reasonable that a person would help a friend in need. The fact that Mr. Adam may have made the transfers to his detriment does nothing, by itself, to alter this equation; it is a basic facet of our legal system that, no matter how improvident it may seem to others, a person is free to dispose of their property as they see fit. *John Ownbey Co. v. Commissioner*, 645 F.2d 540, 546 (6th Cir. 1981).

■■■ Yet, like with other transfers of property, it is a requisite element for an effective gift that the donor have the intent to make a gift of the property to the donee. *Barkley v. Barkley*, 119 Ohio App.3d 155, at fn. 2, 694 N.E.2d 989 (1997). At the same time, and as is the gravamen of the Plaintiffs' action, a mentally incompetent person cannot form the necessary intent to make a gift; the same is also true if the putative donor is subjected to undue influence. *Witte v. Witte*, 22 Ohio Misc. 37, 39, 257 N.E.2d 766, 767 (C.P.1969) (donative intent will be lacking when there

---

1. The Defendant was not represented by legal counsel in this matter, but her legal arguments, although not fully articulated, could be understood.

exist mental incapacity, fraud, duress, or undue influence).

With respect to Mr. Adam's lack of mental capacity, the evidence shows that Mr. Adam was adjudicated to be incompetent in January of 2005, approximately two months after he made those purchases in question. As a matter of law, had these events occurred in reverse order, Mr. Adam would have lacked the mental capacity to effectuate a gift to the Defendant; a person adjudicated incompetent cannot legally transfers his or her property. *Huntington Natl. Bank v. Toland,* 71 Ohio App.3d 576, 578, 594 N.E.2d 1103, 1105 (1991) ("once a guardian has been appointed for an incompetent, transfer of property thereafter is void and may be set aside."). *See also* O.R.C. § 2111.01(D).[2] All the same, the close proximity between these two events is strong evidence that, although not yet adjudicated to be incompetent, Mr. Adam lacked the sufficient mental capacity to gift his property to the Defendant in November of 2004. This is especially true when it is considered that at the time of the transfers, Mr. Adam was exhibiting much of the strange behavior that eventually lead to an adjudication of incompetency.

Yet, countervailing considerations also exist. First, the facts presented in this case tend to show that Mr. Adam's mental facilities declined rather precipitantly. Thus, while Mr. Adam was unquestionably incompetent in January of 2005, such a precipitous decline also calls into question whether two months earlier when he made the purchases on behalf of the Defendant, his mental condition had sufficiently deteriorated so as to make him legally incapable of forming the necessary intent to gift his property. Along this same line, while Mr. Adam's behavior was undoubtably erratic at the time of the transactions in question, he was also still managing his own affairs and living independently. It thus also stands to reason that Mr. Adam was sufficiently lucid at that time of the transactions in question to appreciate the nature of his acts.

■ From an evidentiary standpoint, these points tend to tip the balance in favor of the Defendant. It is the proponent's burden to show, by clear and convincing evidence, that a party lacked the necessary mental capacity to make a gift. 52 Ohio Jur 3D, Gifts, § 41 (2005). Once more, this heightened evidentiary burden may not be attained by simply showing an impairment of the mind, such as that related to age or other physically infirmity; instead, to render a gift ineffective, the deterioration in the donor's mental capacity must be such that they lacked the ability to understand the nature and effect of his or her act. *Cf. Ross v. Barker,* 101 Ohio App.3d 611, 618, 656 N.E.2d 363 (1995). However, even assuming that Mr. Adam lacked the mental capacity to gift his property to the Defendant,—thereby giving rise to a "debt" for purposes of bankruptcy law—does not serve to change the overall result in this case. The Plaintiffs, as now explained, have not sustained their burden of demonstrating the applicability of § 523(a)(2)(A).

■ To further the fresh-start policy of the Bankruptcy Code, the party contesting the dischargeability of a debt under

2. For purposes of appointing a guardian, incompetency is defined under O.R.C. § 2111.01(D) as "any person who is so mentally impaired as a result of a mental or physical illness or disability, or mental retardation, or as a result of chronic substance abuse, that the person is incapable of taking proper care of the person's self or property or fails to provide for the person's family or other persons for whom the person is charged by law to provide, or any person confined to a correctional institution within this state."

§ 523(a)(2)(A) bears the ultimate burden to demonstrate, by at least a preponderance of the evidence, their entitlement to a finding of nondischargeability. *Woodward v. Bethel (In re Bethel)*, 302 B.R. 205, 207 (Bankr.N.D.Ohio 2003). For purposes of § 523(a)(2)(A), this burden requires showing the existence of at least one of the three grounds for nondischargeability set forth therein: (1) false pretenses, (2) a false representation, or (3) actual fraud. The assessment as to the applicability of these grounds is measured by a subjective standard as it exists at the time the debt arose. *Rembert v. AT & T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 281–82 (6th Cir.1998); *Nite Lite Signs and Balloons, Inc., v. Philopulos (In re Philopulos)*, 313 B.R. 271, 282 (Bankr. N.D.Ill.2004).

Each of the three grounds for nondischargeability set forth in § 523(a)(2)(A) are independent; for example, a "false representation" involves an express representation, while "false pretenses" are set around implied misrepresentations or conduct that is intended to create and foster a false impression. *Hile v. Lewis (In re Lewis)*, 164 B.R. 588, 591 (Bankr.N.D.Ohio 1994). But regardless of their individual differences, each of the three grounds for nondischargeability under § 523(a)(2)(A) overlap, and are intended to serve the same goal: to guard against dishonesty, by denying the fresh-start policy of the Bankruptcy Code to a debtor who never had any intention of repaying their obligation. *See, e.g., A.T. & T. Universal Card Services Corp. v. Feld (In re Feld)*, 203 B.R. 360, 365 (Bankr. E.D.Pa.1996). To this end, each of the grounds require a showing of positive fraud; as opposed to fraud implied in law. *In re Rembert*, 141 F.3d at 281.

On this requirement, the Plaintiffs' position relies heavily on the notion that, because of his mental condition, the Defendant "took advantage" of Mr. Adam. But even if true, and while having an air of moral repugnancy, this does not square with § 523(a)(2)(A)'s requirement for positive fraud. Positive fraud is distinguishable from implied fraud by the existence of scienter. *A.T. & T v. Mercer (In re Mercer)*, 246 F.3d 391, 407 (5th Cir.2001) (en banc). Scienter involves moral turpitude or intentional wrong, and thus carries with it, "a mental state embracing intent to deceive, manipulate, or defraud." *Id.; Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 fn. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (interpreting scienter for purposes of securities law). On the other hand, implied fraud may exist without the imputation of bad faith or immorality. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292 (5th Cir.1995).

But to equate "taking advantage" of someone with scienter opens a pandora's box. A multitude of transactions take place every day whereby one party takes advantage of another. A buyer offering a low price to a desperate seller, for example, can be viewed as the former taking advantage of the latter. However, "taking advantage" of someone says nothing as to whether the alleged malefactor intended to repay the obligation, and thus such conduct must be coupled with other acts to give rise to a fraudulent transaction.

Semantics aside, the weight of the evidence simply does not support the existence of any nefarious conduct on the part of the Defendant, much less the existence of scienter. To the contrary, both Mr. Adam and the Defendant were friends; and while Mr. Adam did spend lavishly on gifts, it would also appear that the Defendant reciprocated his generosity, for example, by providing Mr. Adam with a place to stay.

An especially important consideration in this mix: although the Defendant was aware that Mr. Adam's behavior was not completely normal at the time of the transactions in question, no legal action had yet been brought to have Mr. Adam declared incompetent. In this way, the Plaintiffs have not pointed to any legal authority, and the Court is not aware of any, which would have placed a duty upon the Defendant to scrutinize Mr. Adam's mental state to ensure competency. As the Defendant pointed out: both she and Mr. Adam were adults. Thus, while it is not condoning the Defendant's actions, the Court declines, under these circumstances, to extend one party's acceptance of another's generosity into the realm of scienter.

Consequently, for all the reasons stated herein, the Court cannot find that the Plaintiffs have sustained their burden as applicable to their action brought under 11 U.S.C. § 523(a)(2)(A). In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the Plaintiffs' Complaint to Determine Dischargeability, be, and is hereby, DISMISSED.