**In re William/Georgia CATHERMAN, Debtors.**

**Yvan Cote, et al., Plaintiffs,**

**v.**

**William Catherman, Defendant.**

**No. 04–3292.**

United States Bankruptcy Court, N.D. Ohio.

July 8, 2005.

335

Duane L. Galloway, Sandusky, OH, for debtors.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Trial on the Plaintiff/Creditor's complaint to determine dischargeability of debt. The Creditor brings this suit pursuant to the statutory exception to discharge under 11 U.S.C. § 523(a)(2)(A). The Court has now had the opportunity to review the arguments of Counsel, the exhib-

its, as well as the entire record of the case. Based on that review, and for the following reasons, the Court finds that the Creditor has not met his burden under § 523(a)(2)(A); and thus the debt at issue is Dischargeable.

## FACTS

The following facts are undisputed: the Debtor, William H. Catherman, worked for the Creditor's brother at Bay Window and Door. Because of slow business during the winter months, in early December of 2002, the Debtor borrowed the sum of $6,000.00 for living expenses from the Creditor.[1] There was no security for the loan.

In January 2003, the Debtor's mother passed away causing him to incur additional debt for funeral expenses. In early March 2003 the Creditor extended another loan to Debtor in the amount of $4,700.00, via a check marked "funeral." The Parties consolidated the two loans into a single promissory note (hereinafter "note") for a total of $10,700.00. (Ex. A.). When arranging for the second loan, the Creditor requested that the Debtor's wife co-sign. However, when the Parties later met to sign the note, the Debtor said that his wife would not sign. Instead, the Debtor offered as alternative consideration the following supplemental term:

In event of my death before loan paid off-

Balance be paid by money received Matrix Direct Life Insurance Policy # 41871001.

(ex. D).

The Parties attached this term (hereinafter, "supplementary term") to the note. There is no evidence that the Creditor was ever named as a beneficiary on the life

---

1. For simplicity, the Creditors in this case, Mr. Yvan Cote and Mrs. Juanita Cote will be referred to collectively as the Creditor. Mr.

And Mrs. Cote, a married couple, were owed the same debt but only Mr. Cote testified at the Trial.

insurance policy. The note included a payment schedule of $300 per month for four years on which the Debtor began making payments. Neither the note nor the supplementary term mentions the purpose for the loan. There is also no mention of security for the loan in either document.

A few months after the Parties signed the agreement, the Debtor became unemployed when his employer, Bay Window and Door, ceased operations. The Debtor has since been unsuccessful in obtaining further employment despite some efforts. The Debtor made his final payment to the Creditor in July of 2003. In May 2004, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. Among the Debtor's unsecured claims, the Debtor listed the funeral home (app.$2,000.00) and the remaining debt due the Creditor in this case (app.$10,000.00).

The circumstances surrounding the second loan give rise to the § 523(a)(2)(A) claim. The Creditor avers that the Debtor intentionally misrepresented (1) that the purpose of the loan was to pay his obligation to the funeral home, and (2) that his life insurance would secure the loan. The Debtor denies ever representing that the funds were primarily for funeral expenses and also denies that he ever offered any security on the loan.

### LAW

11 U.S.C. § 523.

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-
> >
> > > (A) false pretenses, a false representation, or actual fraud, other than a

statement respecting the debtor's or an insider's financial condition[.]

### DISCUSSION

Proceedings, such as this, brought pursuant to 11 U.S.C. § 523(a)(2)(A) to determine the dischargeability of a particular debt, are deemed "core proceedings" over which this Court has subject matter jurisdiction and the authority to enter final orders. 28 U.S.C. § 157(b)(2)(I).

[1, 2] Generally speaking, § 523(a)(2)(A) excepts from discharge debts incurred by a dishonest act. This statutory exception to discharge is at the center of the fundamental bankruptcy policy which holds that only the honest but unfortunate debtor is entitled to a discharge of his or her debts. *Cohen v. de la Cruz (In re Cohen)*, 523 U.S. 213, 217, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). Under § 523(a)(2)(A), a creditor seeking to except a debt from discharge must prove that:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth;
>
> (2) the debtor intended to deceive the creditor;
>
> (3) the creditor justifiably relied on the false representation; and
>
> (4) its reliance was the proximate cause of loss.

*Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280–81 (6th Cir.1998). The creditor has the burden of establishing each of these elements by a preponderance of the evidence. *Id.* at 281. The Court will now address these elements as they relate to the instant case.

■ To show that the Debtor's representation satisfies the first element, that of making a false representation, the Creditor argues that the Debtor misrepresented that the loan was to pay a debt for his

mother's funeral. The Debtor, while not disagreeing with the Creditor that the loan was at least partially to pay the funeral debt, claims never to have represented the funeral debt to have been the primary purpose for the loan. Rather, the Debtor's version is that the loan was for various debts, including the funeral. And in support of this account, the evidence shows that the Debtor did, in fact, pay a small amount ($108.00) on the funeral. Therefore, the Court takes the Creditor's argument to mean that the Debtor falsely represented that the loan was to be used primarily for the funeral debt.

Other than the Creditor's testimony, the only documentary evidence in support of the Creditor's position is the check for $4,700.00 which the Creditor gave the Debtor for the loan. The Creditor wrote "funeral" on the memo line of the check, which the Creditor claims indicates the primary purpose for the funds. But, based upon the weight of the following, the Court cannot find that any misrepresentation was made by the Debtor as to the primary purpose of the loan.

First, the Debtor's representation would have been truthful because he did have outstanding debts for his truck, his mortgage, and credit cards in addition to the funeral. The Creditor even admitted that he was aware of the Debtor's various financial hardships, through his relationship with his brother, the Debtor's employer, and through having previously extended credit to him. Second, the only documentary evidence that shows the loan was for the funeral is the check, but even that does not show that the loan was primarily for the funeral. In contrast, no purpose for the funds was listed in either the promissory note or the handwritten supplement, where it could easily and more appropriately have been included.

In conclusion, the evidence put forth by the Creditor is insufficient to show that the Debtor represented that the loan was primarily for the funeral. Thus, the Creditor has not met his burden in showing that the Debtor made a false representation concerning the purpose for the loan. As for the representation about the life insurance operating as security for the loan, as will become clear below, this point is more appropriately addressed under the element of intent.

 A creditor must establish that it was the debtor's intent to deceive him into extending credit through a false representation. *Weeber v. Boyd (In re Boyd)*, 322 B.R. 318, 324 (Bankr.N.D.Ohio 2004). Whether a debtor possessed an intent to defraud a creditor within the scope of § 523(a)(2)(A) is measured by a subjective standard. *Rembert*, 141 F.3d at 281. The inquiry, then, is whether a debtor subjectively intended to fulfill a promise at the time he made it. *Id.* Because a debtor rarely, if ever, admits to acting with the intent to deceive, the Court must consider circumstantial evidence concerning the debtor's state of mind at the time of the alleged deception. *Binger v. Bloomfield (In re Bloomfield)*, 293 B.R. 148, 153 (Bankr.N.D.Ohio 2003). This may include inquiry into such factors as the timing of events, the financial sophistication of the debtor, whether or not the debtor was employed at the time he made the charges, and the debtor's conduct in light of subsequent events. *Id.; see also Rembert*, 141 F.3d at 282 (listing factors to consider when determining whether a debtor intended to repay credit card debt). A debtor's efforts, such as incremental payments in fulfillment of an obligation, are strong evidence against intent to deceive. *In re Boyd*, 322 B.R. at 324–25. In summary, the Court must ascertain a debtor's subjective intention by examining the totality

of the circumstances. *Rembert*, 141 F.3d at 282.

■ Here the Creditor avers that the Debtor intended to deceive by representing that the insurance policy would secure the loan. This argument necessarily presupposes that the Debtor understood how to effectuate a security agreement. On this point, the evidence tends to show that the Debtor was unaware of what was necessary to create an assignment of insurance as security for a loan. The Debtor was a window repairman by trade and a layman in legal matters. He was not sure about what was meant by "security" when questioned. As a result, this Court finds it less likely that the Debtor intentionally deceived the Creditor by representing that his insurance was security.

The Court, weighing the Debtor's level of experience, must inquire as to whether he subjectively believed the assignment of insurance to be valid. The Court was convinced by the Debtor's testimony that he believed that his wife would have paid the note if he had died. Consistent with this, at the time of the Trial, the Debtor still owned the term life insurance policy specified in the supplementary term. This and the Debtor's lack of financial sophistication both tend to militate against finding that the Debtor made an intentional misrepresentation.

Finally, going beyond the explicit representation about the insurance, the Court will consider one of the most important factors in determining intent: the timing of events surrounding the loan and bankruptcy. Here, the Debtor was employed at the time he entered into the loan agreement, suggesting that he had the means to make the payments. He made four full payments on the first loan and three full payments on the second loan. It was only a when he lost his job, a few months later, that he stopped making payments. Following this, the Debtor, then 66 years old, made some efforts to search for work by going to Columbus, Ohio, before filing bankruptcy. Unlike a debtor who files bankruptcy immediately after borrowing money, raising suspicion that he may have never intended to repay, the Debtor here filed bankruptcy over a year after he incurred the debt. Overall, the timing of events suggests that the Debtor was entering the transaction honestly. These facts also demonstrate that the Debtor made efforts to fulfill his obligations, another factor which weighs heavily against the intent to deceive. *In re Boyd*, 322 B.R. at 324–25, *accord Rembert* 141 F.3d at 282.

In summary, the Court finds that the totality of the circumstances does not demonstrate beyond a preponderance of the evidence that the Debtor intended to deceive the Creditor. On the contrary, the Debtor's inexperience in commercial transactions lessens the gravity of any mistakes the Debtor may have made regarding the function of the life insurance in the loan agreement. In addition, the evidence suggests that the Debtor made a good faith effort to meet his obligations and nothing about the timing of events is suspicious.

■ However, setting aside, for a moment, the Creditor's insufficient evidence of fraudulent intent, the Court is also unsatisfied that the Creditor has proven the final element of § 523(a)(2)(A), reliance. To prove reliance a creditor must show that he was justified in relying on the debtor's misrepresentation. *See Field v. Mans*, 516 U.S. 59, 72–73, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). The standard has been described by the Ninth Circuit Court of Appeals:

> [T]he standard is not that of the average reasonable person. It is a more subjective standard which takes into account the knowledge and relationship of the

parties themselves. Thus, a person of normal intelligence, experience and education may not put faith in representations which any such normal person would recognize at once as preposterous. At the same time, the standard does protect the ignorant, the gullible, and the dimwitted, for no rogue should enjoy his ill-gotten plunder for the simple reason that his victim is by chance a fool...In other words, while reasonableness of behavior is a factor in the mix, it is only a factor. The more precise question is whether the person who claims to have been gulled was justified in relying. *Eugene Parks Law Corp. v. Kirsh,* 973 F.2d 1454, 1459 (9th Cir.1992), *affirmed* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). In short, a creditor cannot recover if he blindly relied on a misrepresentation that would have been patently obvious if he had made a cursory investigation. *See id.*

As applied here, the Creditor did not show that he was justified in relying, without inquiry, on the insurance policy allegedly offered as security. *See Field v. Mans,* 516 U.S. at 72, 116 S.Ct. 437. The Creditor, who appears to be of average means, loaned the not-insignificant sum of $10,700.00 to the Debtor. Considering the magnitude of this risk, the Creditor would not be justified in relying on representations of the Debtor without at least a cursory investigation. Any representation by the Debtor that the loan would be secured by the insurance policy could easily have been verified. The Creditor could have asked for a copy of the insurance to prove that he had been named as a beneficiary or could have consulted a loan or legal professional about the efficacy of the agreements. Considering the ease of these options and the magnitude of the risk, the Creditor would not be justified in not performing at least this minimal level of investigation. Thus, the Creditor was not justified in relying only on a representation that could have been verified without difficulty. *Id.*

In conclusion, the Creditor has failed to establish that the Debtor intended to mislead the Creditor with a false representation about either the purpose or security for the loan. The written contract and the testimonies, which substantially agree, do not establish any intent to deceive. The Creditor also has not established that he was justified in relying on any representations made by the Debtor. Therefore, the Creditor has failed to meet his burden under § 523(a)(2)(A) and the debt at issue is dischargeable.

In reaching the conclusions found herein, the Court has considered all the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the obligation stemming from the promissory note dated on or about March 7, 2003, between the Debtor, William H. Catherman, and the Plaintiffs/Creditors, Yvan and Juanita Cote, is hereby determined to be a DISCHARGEABLE DEBT.

It is **FURTHER ORDERED** that the Complaint to Determine Dischargeability of Debts by the Creditors under 11 U.S.C. § 523(a)(2)(A) be, and is hereby, DISMISSED.